STATE of South Dakota, Plaintiff
and Appellee,

v.

Charles Michael HUTH, Defendant
and Appellant.

No. 13423.

Supreme Court of South Dakota.

Argued Jan. 19, 1982.

Decided May 11, 1983.

Rehearing Denied June 14, 1983.

486

John P. Guhin, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

John J. Burnett, Rapid City, for defendant and appellant.

TAPKEN, Circuit Judge.

Appellant, Charles Huth, was charged with first degree murder in the stabbing death of Glen Vaughn. After appellant pleaded not guilty and not guilty by reason of mental illness, a jury convicted him of first degree manslaughter. We modify and affirm the judgment.

Appellant and Lea Ann Huth were married in 1977. They separated in May 1979, and, in December 1979, initiated divorce proceedings. Since the separation, Lea Ann has had custody of their son Brandon and has lived with her parents in Rapid City.

On May 21, 1980, Lea Ann, Brandon, and Glen Vaughn, who was dating Lea Ann, went to dinner and attended a softball game in Rapid City. They returned to Lea Ann's parents' home at approximately 10:30 P.M. At approximately 12:30 A.M. on May 22, 1980, Lea Ann answered a telephone call. She heard a muffled noise and the caller hung up. Lea Ann suspected that appellant was calling and asked Vaughn to stay in the event appellant came to the house. A short time later she saw appellant's pickup drive by the house. She heard the dog barking outside and she and Vaughn went out to see what was disturbing the animal. Outside, Lea Ann and Vaughn could hear air escaping from the tire of a vehicle and someone moving about. Vaughn walked toward the area where vehicles were parked while Lea Ann remained near the residence.

Lea Ann observed appellant with a knife as he backed Vaughn against a retaining wall outside the residence. Hoping to prevent harm to Vaughn, Lea Ann threatened to kill appellant's son Brandon. Vaughn grabbed at one of appellant's hands and attempted to push him away. Appellant stabbed Vaughn with the knife. Vaughn died as a result of the stabbing.

Appellant's first issue is that the trial court committed reversible error in failing to instruct the jury that appellant could be committed to a mental hospital if he was found not guilty by reason of mental illness. The following instruction was proposed by appellant:

If you find the defendant not guilty by reason of mental illness, he will not necessarily be released. If you find him not guilty by reason of mental illness, the Court, upon the petition of the State, if the Court deems him dangerous to the public safety, is empowered to order the defendant to be committed to a hospital for the mentally ill and he will be detained there until it has been determined in an appropriate mental examination that the defendant is not a danger to the public safety.

Appellant patterned his proposed instruction after SDCL 23A–26–12 which states:

When the jury has returned a verdict acquitting the defendant upon the ground of mental illness, a court may, if the defendant is in custody and it deems his discharge dangerous to the public safety, order a hearing pursuant to chapter 27A–9. The defendant may be held in custody pending the hearing.

This statute indicates that commitment to a mental hospital upon a verdict of not guilty by reason of mental illness is not mandatory. Whenever the verdict is "not guilty by reason of mental illness," the trial court must find that it would be a danger to the public safety to discharge the defendant. "In South Dakota, commitment is not mandatory; the court must find the defendant 'dangerous to the public peace and safety if left at large.'" We hold it is not prejudicial error to fail to instruct on what is only a possible effect of the jury's verdict." *State v. Black Feather,* 249 N.W.2d 261, 265 (S.D.1976) (citations omitted). Accordingly, the trial court did not commit prejudicial error in failing to instruct the jury as appellant proposed.

Appellant claims the trial court committed reversible error in failing to adopt three instructions relating to justifiable homicide in defense of a person's child. Appellant's proposed instructions are:

*Appellant's Proposed Instruction # 2*

A homicide, that is, the killing of one human being by another, is justifiable when committed by any person in the

lawful defense of his child when there is reasonable ground to apprehend a design to commit a felony, or to do some great personal injury, and imminent danger of such design being accomplished. In order to constitute this defense, it is not necessary that the danger actually exist, but only that there shall be reasonable grounds to apprehend the existence of such danger, and a party, upon honest and reasonable apprehension of such danger to his child, may act to defend him in such manner and with such means as may seem to him reasonably necessary in view of the apparent imminent danger to his child.

*Appellant's Proposed Instruction # 3*

When defense of a child is raised as an issue by evidence tending to show the same, whether produced by the defendant or the State, the burden of proving the defendant did not act in defense of his child rests upon the State beyond a reasonable doubt.

*Appellant's Proposed Instruction # 4*

Where facts exist tending to show justification in killing a person in defense of a child, the defendant is not culpable if, in lawfully defending his child, he unintentionally injures or kills a third person. If upon a fair consideration of the evidence, if any, touching the circumstances of such justification, together with all of the other evidence in the case, you have a reasonable doubt as to whether the defendant committed the homicide unintentionally in the defense of his child, you should find the defendant not guilty.

Instead of adopting appellant's proposed instructions, the trial court offered the following instruction:

*Instruction # 25*

A homicide is justifiable when committed by one who has reasonable cause or grounds to believe, and in good faith does believe, that the person in whose behalf he acts is in immediate and imminent danger of death or serious bodily injury at the hands of the decedent or someone acting in concert with the decedent.

The defendant, however, must have acted upon an honest and reasonable conviction of necessity and a good faith belief that the decedent or someone acting in concert with the decedent intended to kill or seriously injure his child.

The defendant having such an honest and reasonable apprehension of such danger to his child may act to defend him in such manner and with such means as may seem to him reasonably necessary in view of the circumstances.

A person who is exercising his right to defend his child may not only stand his ground but may pursue the person who threatens his child until he has secured his child from the immediate and imminent danger of death or serious bodily injury if that course appears to him, and would appear to a reasonable person in the same situation, to be reasonably and apparently necessary.

The law, however, does not permit or justify one who intends to commit an assault or homicide upon another to design in advance his own defense of his child by instigating a quarrel or combat with a view thereby to create a situation wherein the infliction of the intended injury will appear to have been done in defense of his child.

The kind and degree of force which a person may lawfully use in defense of his child is limited by what a reasonable person in the same situation as such person, seeing what he sees and knowing what he knows, then would believe to be necessary. Any use of force beyond that is regarded by the law as excessive. Although a person may believe that he is acting, and may act, in defense of his child, he is not justified in using a degree of force clearly in excess of that apparently and reasonably necessary under the existing facts and circumstances.

When defense of a child is raised as an issue by evidence showing the same, whether produced by the defendant or state, the burden of proving that the defendant did not act in defense of his child rests upon the state to prove so beyond a reasonable doubt.

■ Appellant raises several challenges to this instruction. First, appellant argues that the instruction did not inform the jury that homicide is justifiable if a person has reasonable grounds to apprehend the existence of a danger to his child even though the actual danger did not actually exist. Justifiable homicide in defense of another person is recognized in South Dakota:

Homicide is justifiable when committed by any person in the lawful defense of such person, or of his or her husband, wife, parent, child, master, mistress, or servant when there is reasonable ground to apprehend a design to commit a felony, or to do some great personal injury, and imminent danger of such design being accomplished.

SDCL 22–16–35. Thus, the mental perception of a person claiming the defense of justifiable homicide must be a "reasonable," good faith, honest apprehension of danger to a child. The provisions of SDCL 22–16–35 were adequately explained and the jury was sufficiently instructed on justifiable homicide in defense of a child.

■ Appellant further argues that instruction # 25 failed to inform the jury that an unintentional killing of a human being was an excusable homicide. The trial court, however, gave other adequate instructions on excusable homicide and accidental acts. *See* South Dakota Pattern Jury Instructions (Criminal) 2–14, 3–7–350. Instructions to a jury must be read in their entirety and considered as a whole. *State v. Fox,* 313 N.W.2d 38 (S.D.1981); *State v. Poss,* 298 N.W.2d 80 (S.D.1980). Accordingly, we find appellant's argument without merit.

■ Appellant also argues that instruction # 25 erroneously presented the question of self-design of a quarrel or combat to justify an act of self-defense. The record does not indicate appellant designed any quarrel with Vaughn in advance to make the homicide appear justifiable in defense of the child. This portion of the instruction, however, was not prejudicial to the defendant and no error resulted therefrom. *State v. Keliher,* 46 S.D. 484, 194 N.W. 657 (1923).

■ Appellant next alleges that four photographs allowed into evidence constituted error because they were irrelevant, cumulative, and their probative value was outweighed by the danger of prejudice to the jury. Three of the photographs showed Vaughn's body lying beside an automobile and one photograph showed Vaughn's severely lacerated right hand. In his opening statement, appellant's counsel admitted the stabbing and death of Vaughn by appellant. This admission does not relieve the state of its burden of proof of the necessary elements of the offense charged. *State v. Brewer,* 266 N.W.2d 560 (S.D.1978). And even though appellant offered to stipulate to Vaughn's identity, this concession does not deprive the state of graphic proof of such fact. *State v. Krana,* 272 N.W.2d 75 (S.D.1978). Photographs are not inadmissible simply because testimony at trial also established the victim's identity, portrayed his death, the wounds, and position of the body at the scene. *State v. O'Blasney,* 297 N.W.2d 797 (S.D.1980). "Photographs are admissible 'when they accurately portray anything which it is competent for a witness to describe in his own words, or where they are helpful as an aid to a verbal description of objects or conditions and relevant to some material issue.'" *State v. Hawk,* 292 N.W.2d 346 (S.D.1980). Even though photographs are somewhat gruesome, cumulative, or capable of arousing passion or prejudice in the jury, the admissibility of the photos is within the sound discretion of the trial court. *State v. Rash,* 294 N.W.2d 416 (S.D.1980). After a careful review of the photographs, we cannot say the trial court abused its discretion in admitting them into evidence.

Appellant next contends that the judgment and sentence of the trial court violates his constitutional rights. Appellant was sentenced to 100 years in the state penitentiary; 75 years of the term was suspended on several conditions including that he repay indigent counsel fees and costs of prosecution to Pennington County.

First, appellant argues that the sentence of 100 years violates the South Dakota Con-

stitution, Article VI, § 15,[1] because any revocation of probation for failure to pay fees and costs would be tantamount to imprisonment for a debt. We do not agree.

The constitutional rights of defendant are adequately protected by the provisions contained in SDCL 23A–40–10.[2] Appellant's probation cannot be revoked for nonpayment of fees and costs as a condition of probation if he does not have the ability to pay. Nonpayment of court appointed counsel fees and a revocation of a suspended sentence is not an imprisonment for debt but is a sanction imposed for an intentional refusal to obey the order of the court. *White Eagle v. State,* 280 N.W.2d 659 (S.D. 1979). Appellant's sentence states: ".... the court will not consider a failure to pay this portion of the sentence a violation of probation if the defendant does not have the ability to pay." Thus, appellant's sentence also protects him from any imprisonment for debt.

Appellant also argues that his Fourteenth Amendment rights under the United States Constitution have been violated by that portion of the judgment and sentence which provides "That the Court will consider it an intentional and contumacious violation of this term and expose you to revocation if you voluntarily discharge this obligation in bankruptcy, ...". We agree with his contention.

In *James v. Strange,* 407 U.S. 128, 92 S.Ct. 2027, 32 L.Ed.2d 600 (1972), the court held a Kansas statute recouping indigent counsel fees unconstitutional since the indigent defendant was not accorded any of the exemptions provided by Kansas law except for the homestead exemption that was available to other judgment debtors. *James* compels us to hold that the portion of the judgment and sentence exposing appellant to revocation if he voluntarily discharges any legal obligation in bankruptcy unconstitutionally deprives appellant of rights and remedies afforded to other individuals.[3]

Appellee's argument that appellant failed to preserve his constitutional attack on this portion of the judgment and sentence since appellant consented to all the conditions is not applicable because we find that portion of the sentence void. *Gatton v. Brewer,* 268 N.W.2d 185 (Iowa 1978).

Appellant argues the sentence and judgment of the court deprives him of the defense of inability to pay the indigent costs and fees because the judgment and sentence states: "That the defendant may not be discharged from probation or parole until the entire amount ordered to be reimbursed to Pennington County, as has heretofore been set forth in this judgment, has been paid to Pennington County." But a reading of the whole judgment and sentence indicates that the appellant must have the ability to repay said amount. As previously stated, SDCL 23A–40–10 requires any court revoking appellant's probation to find that the defendant has available funds before repayment can be ordered. If appellant cannot truly make the repay-

---

1. Article VI, § 15 of the South Dakota Constitution provides:

   No person shall be imprisoned for debt arising out of or founded upon a contract.

2. SDCL 23A–40–10 provides:

   Whenever the court finds that funds are available for payment from or on behalf of a defendant to carry out, in whole or in part, the provisions of this chapter, the court may order that the funds be paid, as court costs or as a condition of probation, to the court for deposit with the county treasurer, to be placed in the county general fund or in the public defender fund in those counties establishing such an office pursuant to subdivision (1) of § 23A–40–7 as a reimbursement to the county to carry out the provisions of this section. Such reimbursement shall be a credit against any lien created by the provisions of this chapter against the property of the defendant.

3. A question remains whether an order for reimbursement to a governmental agency for indigent counsel fees is dischargeable in bankruptcy. *See* 11 U.S.C. § 362(b)(1); 11 U.S.C. § 523(a)(7); and *In re Button,* 8 B.R. 692 (Bkrtcy.1981), which deals with the nondischargeability of court ordered restitution to a victim of a crime in bankruptcy court under 11 U.S.C. § 362(b)(1), and under the theory such an obligation is not of a debtor-creditor relationship.

ment, his probation will not be revoked for failure to do so. "An order of repayment as a condition of probation, may not be enforced unless a finding of availability of funds is made." *White Eagle v. State, supra,* at 662. Therefore, except for the voluntary bankruptcy condition, appellant's constitutional rights were not violated by the judgment and sentence and conditions of suspension.

Appellant, who was allowed to file a pro se brief with this court, raised additional issues.

■■■■ First, appellant contends that the testimony of Lea Ann was so tainted that he was denied a fair trial. Jurors are the triers of fact and it is their function to determine the credibility of witnesses. *State v. Fox, supra; State v. Masteller,* 272 N.W.2d 833 (S.D.1978); *State v. Herman,* 253 N.W.2d 454 (S.D.1977); *State v. Minkel,* 89 S.D. 144, 230 N.W.2d 233 (1975); *State v. Shank,* 88 S.D. 645, 226 N.W.2d 384 (1975). This court will not interfere with the jury's discretion to believe or disbelieve a witness. *State v. Herman, supra.* The trial court properly and adequately instructed the jury as to their function as the fact finders and on the credibility of the witnesses. Accordingly, appellant's attack on the credibility of Lea Ann Huth's testimony is without merit.

■■■■ Appellant contends his conviction must be overturned because Lea Ann violated SDCL 22–29–6[4] by procuring other witnesses to commit perjury. The facts of conversations between the witnesses and Lea Ann were brought forth before the jury by appellant's counsel during the trial. Whether the jurors accepted their testimony as truth or not is in their discretion. *State v. Fox, supra.*

Appellant argues the court erred in ruling on appellee's motion in limine to exclude testimony of Lea Ann's sexual relations and activities as immaterial. Appellant has misread the record in this matter.

The trial court denied the motion of appellee, thereby ruling in appellant's favor. This issue is without merit.

■■■■ Appellant argues that the trial court erred by not including a verdict form whereby the jury could specifically find appellant not guilty by reason of justifiable homicide in defense of a child. The five separate verdict forms submitted by the trial court included guilt for murder, manslaughter in the first degree, manslaughter in the second degree, not guilty, and not guilty by reason of mental illness. The jury was adequately instructed on appellant's defense of justifiable homicide in defense of his child without intent or by accident. Special verdicts are no longer permitted in this state under SDCL 23A–26–3 except for the verdict of not guilty by reason of mental illness. The verdict forms proposed by the trial court were proper and adequate when considered with the instructions to the jury as a whole and the testimony presented during the trial.

■■■■ Appellant also contends that newly discovered evidence justifies the granting of a new trial. The newly discovered evidence is the length of the telephone cord which was on the telephone used by Lea Ann to call the police the night of the stabbing and the mental condition of appellant at the time of the stabbing.

A motion for a new trial will not be granted absent a showing that there is newly discovered evidence which was unavailable at trial despite diligent efforts to procure the same. There must also be a showing that substantial rights of the defendant have been prejudiced. The test for determining if a motion for new trial based on newly discovered evidence should be granted is twofold: (1) Is the evidence cumulative; and (2) is there a reasonable possibility that the newly discovered evidence would probably produce a different result on retrial. *Id* at 335, 336 (citations omitted.)

---

4. SDCL 22–29–6 provides:

Any person who intentionally procures another person to commit any perjury is guilty

of subornation of perjury.

*State v. Lufkins,* 309 N.W.2d 331 (S.D.1981). We fail to find that the evidence would produce a different result and appellant is not entitled to a new trial.

Accordingly, the judgment and sentence is affirmed except the condition exposing appellant to revocation of probation for voluntarily submitting himself to bankruptcy and discharging the obligation to repay Pennington County for indigent counsel fees and costs.

All the Justices concur.

TAPKEN, Circuit Judge, sitting for HENDERSON, J., disqualified.