STATE of South Dakota, Plaintiff and Appellee,

v.

Kendall ROBINSON, Defendant and Appellant.

No. 15202.

Supreme Court of South Dakota.

Argued Sept. 17, 1986.

Decided Jan. 7, 1987.

Thomas Harmon, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Patricia A. Meyers of May, Adam, Gerdes & Thompson, Pierre, for defendant and appellant.

WUEST, Chief Justice.

This is an appeal from a judgment of conviction following a verdict of guilty but mentally ill rendered on charges of escape and aggravated assault. We affirm.

Sometime in the early part of 1985, Kendall Robinson (Robinson) was taken into custody in connection with a series of burglaries that had occurred in Pierre, South Dakota. After a preliminary hearing he was bound over for trial on two counts of third-degree burglary and on possession of a firearm by a convicted felon. Robinson insisted that he was innocent of the burglary charges and had acquired the firearm from his brother only after being threatened by a person who resided directly below his apartment.

At the age of 25, Robinson had served prior sentences for burglary and escape in the South Dakota State Penitentiary. His activities thereafter drew the close attention of local law enforcement.

On May 8, 1985, before trial, Robinson and another inmate at the Hughes County jail overpowered a deputy and escaped. Robinson was apprehended a week later and charged with escape and aggravated assault. Robinson pled not guilty and not guilty by reason of insanity. Psychiatric examinations were provided by the Court. Two psychiatrists testified at trial. The jury found Robinson guilty but mentally ill on both counts (GBMI). Robinson appeals the verdict and conviction.

Robinson's first point on appeal is that the trial court erred in not giving a proposed jury instruction concerning the mandatory commitment of defendants found not guilty by reason of insanity (NGBRI).

■ In 1983 our legislature approved a "Guilty but Mentally Ill" verdict, while retaining the traditional insanity defense. The earlier definition of "mentally ill," formerly SDCL 22-1-2(22), was transferred to "insanity" under SDCL 22-1-2(18A). Insane people are legally incapable of committing crimes, but those people who are merely "mentally ill" may be held criminally responsible. If a defendant is acquitted by reason of insanity, the court shall enter its order that the defendant be committed to the Human Services Center until such time as he is eligible for release pursuant to SDCL 23A-26-12.5.

■ In this case the defendant proposed a jury instruction which provided that should the jury find a defendant not guilty by reason of insanity it was mandatory the defendant be committed to the Human Services Center. The court refused this instruction which he claims as error.

In *State v. Huth,* 334 N.W.2d 485 (S.D. 1983) the defendant requested a similar instruction. This Court held:

> This statute indicates that commitment to a mental hospital upon a verdict of not guilty by reason of mental illness is not mandatory. Whenever the verdict is "not guilty by reason of mental illness," the trial court must find that it would be

a danger to the public safety to discharge the defendant. "In South Dakota, commitment is not mandatory; the court must find the defendant 'dangerous to the public peace and safety if left at large'." We hold that it is not prejudicial error to fail to instruct on what is only a possible effect of the jury's verdict. *State v. Black Feather*, 249 N.W.2d 261, 165 (S.D.1976) (Citations omitted). Accordingly, the trial court did not commit prejudicial error in failing to instruct the jury as appellant proposed. 334 N.W.2d at 487.

Since the *Huth* decision, the law has been changed to make commitment mandatory. However, a defendant, so committed may be released almost immediately. *See* SDCL 23A–26–12.5 for conditions of release. Although the commitment is now mandatory, the length of the defendant's confinement is still speculative under the provisions of SDCL 23A–26–12.5, although he now sustains the burden of proof to be released. SDCL 23A–26–12.5 and SDCL 23A–26–12.3. Nevertheless, we believe the reasoning in *Huth* is applicable to the present case. Further, the purpose of the jury is to find the facts and determine a defendant's guilt or innocence. Our sister state of North Dakota has recently passed upon this same issue. In *State v. Huber*, 361 N.W.2d 236 (N.D.1985), the court said:

> The consequences of a verdict of not guilty by reason of a lack of criminal responsibility have no bearing on any issue which the jury must decide. An instruction of the kind requested would invite the jury to speculate about a defendant's ultimate disposition and invite it to render a verdict on the basis of something other than the evidence before it. See *State v. Garrett*, 391 S.W.2d 235 (Mo.1965). "Punishment, or whatever may transpire after the verdict, is not the concern of the jury." *State v. Park*, 159 Me. 328, 193 A.2d 1, 5 (1963). In short, "it is simply no business of the jury what happens to the accused if he is acquitted on the ground of insanity." Annot., 11 A.L.R.3d 737, 742 (1967). We therefore hold that the trial court did not err in

refusing to instruct the jury on the disposition of the defendant in the event the jury were to find him not guilty by reason of a lack of criminal responsibility.

In reaffirming their decision in *State v. Park*, 159 Me. 328, 193 A.2d 1 (1963), the Supreme Court of Maine stated that if it were proper to inform the jury that commitment to a mental institution results from a verdict of NGBRI it would be equally appropriate that the jury be instructed concerning the statutory circumstances under which the defendant's future tenure in the institution could be terminated. Such instruction would substitute one unaccepted area of speculation for another. *State v. Dyer*, 371 A.2d 1079 (Me.1977), *citing Garrett v. State*, 320 A.2d 745, 750 (Del. 1974). Many decisions on this subject are collected in Annot., 11 A.L.R.3d 737 (1967 and 1986 Supp.).

We uphold the decision of the trial court in refusing this requested instruction.

■ Robinson's final claim on appeal is that the GBMI verdict violates a defendant's due process rights and subjects a GBMI defendant to cruel and unusual punishment. The arguments presented by the defendant are not specific nor persuasive. He claims a GBMI verdict exposes a defendant to liberty deprivations greater than those faced by a offender who is merely found guilty because SDCL 23A–27–38 provides that:

> If a defendant is found 'guilty but mentally ill' or enters that plea and the plea is accepted by the court, the court shall impose any sentence which could be imposed upon a defendant pleading or found guilty of the same charge. If the defendant is sentenced to the state penitentiary, he *shall* undergo further examination and *may* be given the treatment that is psychiatrically indicated for his mental illness. *If treatment is available*, it may be provided through facilities under the jurisdiction of the Board of Charities and Correction.... (Emphasis added.)

In addition, upon discharge of a guilty but mentally ill inmate from a treating facility prior to the expiration of an inmate's sentence, the facility must report to the Board of Pardons and Paroles on the condition of the inmate. SDCL 23A–27–39. And further, SDCL 24–15–25 provides that continued treatment can also be a condition of parole and failure to continue said treatment would subject the appellant to a possible parole violation.

We believe Robinson's arguments are premature. None of the possibilities provided in the statutes have occurred to him, except he has or will undergo examination at the penitentiary pursuant to SDCL 23A–27–38. At this point there is no determination he needs further treatment, that it is available, and that treatment will be a condition of his parole. We cannot speculate about the future course of appellant's treatment, if any. The examination may very well show that he does not need any. The Legislature has provided anyone committed under SDCL 23A–26–12 (GBMI and NGBRI) may test by habeas corpus the illegality of his detention. SDCL 23A–46–6. If, in the future appellant can show some unlawful detention and applies for a writ of habeas corpus, we can address the issue at that time when it is ripe for determination.

■ Nor do we find any cruel and unusual punishment. It is difficult for us to equate treatment for a mental condition to cruel and unusual punishment as suggested by the defendant. We believe it is humane to provide mental treatment to inmates at the penitentiary, if it is required and available the same as treatment for any other illness. In our opinion, treatment for an illness, mental or otherwise, does not constitute cruel and unusual punishment.

The judgment is affirmed.

MORGAN, J., and FOSHEIM, Retired Justice, concur.

HENDERSON and SABERS, JJ., concur in part and dissent in part.

MILLER, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.

HENDERSON, Justice (concurring in part and dissenting in part).

I concur on the first issue and dissent on the second issue.

This dissent focuses upon Robinson's assertion that the guilty but mentally ill (GBMI) verdict violates his due process rights.

The GBMI statute is a new legislative vehicle designed to act on those persons, who although mentally ill, still possess the requisite mental ability to be held criminally responsible. A defendant can either plead GBMI, or have the statute forced upon him by virtue of his assertion of an insanity plea. SDCL §§ 23A–27–38 and 23A–26–14.

Robinson claimed that he was insane[1] during the assault and escape. Utilizing SDCL 23A–26–14, the trial court judge instructed the jury that it could find Robinson guilty but mentally ill.[2] Robinson was found guilty but mentally ill on both counts.

Robinson advocates that the GBMI verdict aborts due process protections which necessarily render the statute's application in this case unconstitutional. I agree to

---

**1.** SDCL 22–1–2(18A) defines "insanity" as
the condition of a person temporarily or partially deprived of reason, upon proof that at the time of committing the act charged against him, he was incapable of knowing its wrongfulness, but not including an abnormality manifested only by repeated unlawful or antisocial behavior[.]

**2.** SDCL 22–1–2(22) defines "mental illness" as

a substantial psychiatric disorder of thought, mood or behavior which affects a person at the time of the commission of the offense and which impairs a person's judgment, but not to the extent that he is incapable of knowing the wrongfulness of his act. Mental illness does not include abnormalities manifested only by repeated criminal or otherwise antisocial conduct[.]

the extent that Robinson should have received a due process hearing prior to sentencing on the subject of his current mental status.

Robinson pleaded insanity. If the jury determined he was insane when he assaulted the deputy and escaped, Robinson would have been found not guilty by reason of insanity and immediately committed to the Human Services Center. SDCL §§ 23A–26–5 and 23A–26–12. However, as the majority opinion points out, Robinson would have been entitled to a hearing at which he may present evidence and be represented by counsel. SDCL §§ 23A–26–12.2 and 23A–46–3. If Robinson showed sufficient recovery from his mental deficiencies (in existence at the time of the assault and escape), he would be released. *See* SDCL §§ 23A–26–12.3 through 23A–26–12.5, inclusive. In other words, the individual's *present mental status* is the key area of inquiry at these hearings.

In actuality, the jury found Robinson not insane, but GBMI. According to our statute, a hearing on the issue of Robinson's present mental status is not statutorily mandated. *See* SDCL 23A–27–38.[3] The new GBMI provision permits defendants to be summarily treated, psychiatrically, either in prison or in another facility, at the discretion of the Board of Charities and Corrections. Yet, if Robinson was found to be insane at the time he committed his crimes, he would have been entitled, statutorily, to assert subsequent mental recovery at a post-verdict hearing and secure his release if he was successful in showing same. It seems to me that a person with an arguably lesser degree of mental malfunction (GBMI) would be more likely to experience mental rehabilitation than would an individual so mentally affected as to be found insane at the time of the crime's commission.

In my opinion, this type of compelled psychiatric treatment triggered by a GBMI statute, absent a due process hearing, is unconstitutional. How can we force a prisoner into a psychiatric program without first according him the opportunity to present evidence regarding his current mental status? The answer is: We cannot. Should we not consider, via hearing, the possibility that the defendant's mental illness, present during his crime's commission, has since dissipated? The answer is: Indeed, we should.

Both our state and federal constitutions guarantee that "[n]o person shall be deprived of life, liberty or property without due process of law." S.D. Const. art. VI, § 2. *See* U.S. Const. amend. XIV, § 1. *See Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); *Northwest S.D. Prod. Credit v. Dale,* 361 N.W.2d 275 (S.D.1985). The United States Supreme Court has held that involuntary transfer of a prisoner to a mental hospital is an infringement upon that prisoner's liberty because both his freedom of action is further curtailed by the treatment and he may be stigmatized by the psychiatric program. *Vitek v. Jones,* 445 U.S. 480, 494–96, 100 S.Ct. 1254, 1263–65, 63 L.Ed.2d 552, 565–67 (1980). The Supreme Court in *Vitek* goes on to say:

> Concededly the interest of the State in segregating and treating mentally ill patients is strong. The interest of the prisoner in not being arbitrarily classified as mentally ill and subjected to unwelcome treatment is also powerful, however; ...

---

**3.** SDCL 23A–27–38 provides:

> If a defendant is found "guilty but mentally ill" or enters that plea and the plea is accepted by the court, the court shall impose any sentence which could be imposed upon a defendant pleading or found guilty of the same charge. If the defendant is sentenced to the state penitentiary, he *shall undergo further examination* and *may be given ... treatment* that is psychiatrically indicated for his mental illness. *If treatment is available, it may be*

> *provided* through facilities under the jurisdiction of the board of charities and corrections. The board of charities and corrections *may transfer the defendant from the penitentiary to other facilities* under its jurisdiction and return the defendant to the penitentiary after completion of treatment for the balance of the defendant's sentence. (Emphasis supplied mine.)

Author's note: This statute was passed in 1983 shortly after the Hinckley verdict furor.

the risk of error in making the determinations ... is substantial enough to warrant appropriate procedural safeguards against error.

*Vitek,* 445 U.S. at 494–95, 100 S.Ct. at 1265, 63 L.Ed.2d at 566. South Dakota's "appropriate procedural safeguards" do not exist. The High Court identified the minimum procedural requirements as follows:

A. Written notice to the prisoner that a transfer to a mental hospital is being considered;

B. A hearing, sufficiently after the notice to permit the prisoner to prepare, at which disclosure to the prisoner is made of the evidence being relied upon for the transfer and at which an opportunity to be heard in person and to present documentary evidence is given;

C. An opportunity at the hearing to present testimony of witnesses by the defense and to confront and cross-examine witnesses called by the state, except upon a finding, not arbitrarily made, of good cause for not permitting such presentation, confrontation, or cross-examination;

D. An independent decisionmaker;

E. A written statement by the factfinder as to the evidence relied on and the reasons for transferring the inmate;

F. Availability of [competent assistance to aid in presentation of the prisoner's case]; and

G. Effective and timely notice of all the foregoing rights.

*Id.* (citation omitted).

Surely, these procedural safeguards, adopted by the United States Supreme Court in *Vitek,* should also apply to a prisoner in Kendall Robinson's situation. Robinson may well be mentally sound, and to involuntarily subject him to mental treatment and the accompanying stigma of such treatment is wrong. Due process requires a fair decision-making procedure. *Jackson v. Indiana,* 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972).

To force a potentially sane man into psychiatric treatment is, to me, constitutionally offensive. "We must not lose sight of the basic concept of the Eighth Amendment, namely, that a penalty must accord with 'the dignity of man.'" *State v. Helm,* 287 N.W.2d 497, 501 (S.D.1980) (Henderson, J., dissenting) (quoting *Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630, 642 (1958)). *See State v. Weiker,* 366 N.W.2d 823 (S.D.1985). *See also United States ex rel. Schuster v. Herold,* 410 F.2d 1071 (2d Cir.), *cert. denied,* 396 U.S. 847, 90 S.Ct. 81, 24 L.Ed.2d 96 (1969) (where the court noted that a sane person involuntarily confined with the insane "will be exposed to physical, emotional and general mental agony. Confined with those who are insane, told repeatedly that he too is insane ... it does not take much for a man to question his own sanity and in the end to succumb to some mental aberration."). *Id.* at 1078.

Our United States Supreme Court has often championed the concept that the Eighth Amendment bars "excessive" and "barbaric" punishments. *See State v. Helm,* 287 N.W.2d at 500 (Henderson, J., dissenting) (citing *Coker v. Georgia,* 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977); *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977); *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972); *Trop v. Dulles,* 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958)). If Kendall Robinson is sane and if he psychiatrically treated against his will, this, in my mind, constitutes cruel and unusual punishment. Restraints on the mind can be more cruel than restraints on the body. Medical treatment may alter thought processes; it can create tremendous mental agony.

A due process inquiry is necessary to fully and fairly address "'the subtleties and nuances of psychiatric diagnoses.'" *Vitek,* 445 U.S. at 495, 100 S.Ct. at 1265, 63 L.Ed.2d at 566 (quoting *Addington v. Texas,* 441 U.S. 418, 430, 99 S.Ct. 1804, 1811, 60 L.Ed.2d 323, 333 (1979)). "The medical nature of the inquiry ... does not justify dispensing with due process requirements"; and in fact it is precisely the medical na-

ture of the inquiry which "justif[ies] the requirement of adversary hearings." *Vitek*, 445 U.S. at 495, 100 S.Ct. at 1265, 63 L.Ed.2d at 566 (quoting *Addington v. Texas*, 441 U.S. at 430, 99 S.Ct. at 1811, 60 L.Ed.2d at 333).

South Dakota state statutes should make post-verdict, presentence, due process hearings available to GBMI persons who assert that their current mental status has improved (from the time they committed their crimes) to the point that psychiatric treatment is no longer warranted. Said hearings would insure that those defendants psychiatrically treated are actually in need of care.[4] GBMI individuals who have mentally recovered would be spared treatment and the State would therefore avoid wasting delicate and costly professional services on those who neither need nor want them. In this manner, the State would be better able to concentrate its resources on those prisoners who may benefit from psychiatric treatment.[5]

It is recognized by legal scholars that GBMI is a serious erosion on the insanity defense. *See generally* Sherman, *Guilty But Mentally Ill: A Retreat from the Insanity Defense*, 7 Am. J.L. & Med. 237 (Bost. Univ. Sch. of Law 1981). If, indeed, we in the law will erode this defense, should we not recognize it as such and preserve all constitutional guarantees of due process and the protection of the Eighth Amendment? We must establish commitment standards. South Dakota has fallen short of the mark. Upon us rests a fundamental

duty to serve mankind, and we must therefore respect the constitutional rights of all men to liberty, equality, and justice. To those poor souls who have dropped off the cliff of mental health, we must be particularly vigilant.

It is for these reasons that I respectfully dissent from the majority opinion.

I am hereby authorized to state that Justice SABERS joins in this concurrence in part and dissent in part.

---

4. South Dakota's statutory scheme compels mental examinations and yet state authorities "may" give the treatment that is "psychiatrically indicated for his mental illness." To make things worse, South Dakota's statutory scheme then recites: *"If treatment is available, it may·be provided...."* See SDCL 23A–27–38, *supra*, at n. 3 (emphasis added).

5. I do not, at this time, address what I consider to be a most questionable area concerning our GBMI statute: that mentally ill persons (who should rightfully be in hospitals) will be confined in prison. This situation raises the disturbing spectres that mentally ill prisoners will not receive the psychiatric treatment they require and will also be abused by the general prison population. Not far removed in history,

mental patients were placed in chains or on the "rack." We no longer have this, praise a more enlightened people. Memories of the American people are short, however, and new legislation governing mental illness/criminal responsibility should be X-rayed for constitutionality. A student interested in this aspect of the GBMI phenomena is urged to consult the following sources. *People v. McLeod*, 407 Mich. 632, 663–680, 288 N.W.2d 909, 919–27 (1980) (Levin, J., concurring in affirmance); Britton & Bennett, *Adopt Guilty But Mentally Ill?—No!*, 15 U.Tol.L. Rev. 203 (1983); Sherman, *supra*, 7 Am. J.L. & Med. 237; Comment, *The Constitutionality of Michigan's Guilty But Mentally Ill Verdict*, 12 J.L. Reform 188 (1978).