APPEL, Justice (dissenting).
I. Introduction.
In 2009, Jane Doe was indigent. The state charged her with two crimes. The district court appointed counsel because her income was "at or below 125% of guidelines" and she was "unable to pay an attorney." The charges were then dismissed. All that remains of the episode are a record of the dismissed charges, the burden on Doe's life created by that record, and attorney fees she owes to the state.
In the proceedings below, Doe moved to expunge the record of dismissed charges pursuant to Iowa Code section 901C.2 (2017). Recognizing that section 901C.2(1)(a )(2) prohibits expungement unless all court costs and fees are paid, she asserted that the prohibition is unconstitutional under the due process and equal protection provisions of the Federal and Iowa Constitutions. The district court denied the motion.
On appeal, she abandons the due process argument and presents a narrow constitutional question under the federal and state equal protection provisions. Can the legislature, in providing for expungement of criminal records, discriminate between (1) persons who owe money to privately-retained counsel and (2) persons who owe money to court-appointed counsel incurred because they were indigent?[5]
II. Rational Basis Review.
The parties agree we should evaluate the challenge under rational basis review.[6]
*668 Our approach to rational basis review under the Iowa Constitution involves three steps: (1) identify the classes of similarly situated persons treated differently; (2) examine the legitimacy of the end to be achieved; and (3) consider the rationality of the means chosen by the legislature to achieve its desired end. See LSCP, LLLP v. Kay-Decker , 861 N.W.2d 846, 859-60 (Iowa 2015) ; Racing Ass'n of Cent. Iowa v. Fitzgerald , 675 N.W.2d 1, 7-8 (Iowa 2004). Under federal law, we ask whether the classification drawn by the statute is rationally related to a legitimate state interest. City of Cleburne v. Cleburne Living Ctr. , 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985).
III. Discussion.
A. Similarly Situated Groups. The two groups identified by Doe are similarly situated. In this respect, I agree with the majority. I also agree that the similarly situated groups are treated differently. Although both groups owe attorney fees, the debts only prevent the latter group from expungement.
B. Legitimate End. Is there a legitimate end for the requirement to pay court costs and fees before gaining entitlement to expungement? The majority suggests the legitimate purpose is to encourage payment of court debt. I agree that encouraging payment of court debt is a legitimate goal. However, as explained below, I am not convinced that withholding expungement is a rational way to achieve that goal. Further, I do not think the classification drawn between similarly situated persons rationally serves that goal.
C. Rationality of Means Chosen to Achieve Desired End. The legislature has not chosen a rational means to achieve its desired end. The problem is twofold.
1. General irrationality of withholding expungement to encourage repayment of court debt. It seems obvious that withholding expungement until court debt is repaid is irrational and counterproductive where a person lacks a reasonable ability to pay the court debt. See, e.g. , Thomas v. Haslam , 329 F.Supp.3d 475, 491 (M.D. Tenn. 2018), appeal docketed , No. 18-5766 (6th Cir. July 27, 2018); see also State v. Collins , No. 43168, 1981 WL 4990, at *2 (Ohio Ct. App. May 28, 1981) (explaining that it would be an equal protection violation to deny expungement, on the basis of outstanding court debt, to a person adjudged indigent at the time of the ruling on expungement). But it seems to me that Doe has not challenged section 901C.2(1)(a )(2) on the grounds that it discriminates against those currently lacking a reasonable ability to pay outstanding court debts, so I join the majority in reserving judgment on this question.
2. Irrationality of classifying among those owing debts to private and court-appointed attorneys. I now come to the heart of Doe's challenge. At the outset, the majority wrongly seems to believe the fact that there is no constitutional right to expungement is significant. The lack of a constitutional right might have a bearing on determining the level of scrutiny. But *669 level of scrutiny is not an issue in this case. All parties agree that we should apply a rational basis test. For rational basis review, it does not matter at all whether the interest involved is of constitutional dimension. We must decide if, in granting the statutory right , the legislature has drawn an unconstitutional line.
Many state and federal decisions establish that the legislature cannot grant statutory rights that irrationally discriminate against similarly situated persons. The right to appeal a criminal conviction provides a good example. "It is true that the right of appeal is purely statutory, not constitutional, and may be granted or denied by the legislature as it determines." Shortridge v. State , 478 N.W.2d 613, 615 (Iowa 1991), superseded by statute on other grounds , 1992 Iowa Acts ch. 1212, § 38 (codified at Iowa Code § 822.9 (1993)). But "once a right of appeal is provided '[i]t may not be extended to some and denied to others.' " Id. (alteration in original) (quoting In re Chambers , 261 Iowa 31, 33, 152 N.W.2d 818, 820 (1967) ); see also State v. Hinners , 471 N.W.2d 841, 843 (Iowa 1991) ("[O]nce the right of appeal has been established, 'these avenues must be kept free of unreasoned distinctions that can only impede open and equal access to the courts.' " (alteration in original) (quoting Rinaldi v. Yeager , 384 U.S. 305, 310, 86 S.Ct. 1497, 1500, 16 L.Ed.2d 577 (1966) )). "When procedures enacted by the State serve to deny one person the right of appeal granted to another, equal protection of the law is denied." Shortridge , 478 N.W.2d at 615.
The same reasoning is found in federal decisions. The Federal Constitution, it is usually asserted, does not require states to provide appellate courts or a right to appellate review. McKane v. Durston , 153 U.S. 684, 687, 14 S.Ct. 913, 915, 38 L.Ed. 867 (1894). Cf. Jones v. Barnes , 463 U.S. 745, 756 n.1, 103 S.Ct. 3308, 3315 n.1, 77 L.Ed.2d 987 (1983) (Brennan, J., dissenting) (arguing that, were the question to squarely come before it, the Court would reassess its prior decisions and decide that some form of review of criminal convictions is required). But if a state establishes a right of appeal, it cannot administer its appellate process in a discriminatory manner and still be consistent with the Due Process and Equal Protection Clauses of the Fourteenth Amendment. Griffin v. Illinois , 351 U.S. 12, 18, 76 S.Ct. 585, 590, 100 L.Ed. 891 (1956) (plurality opinion).
Here, the legislature has drawn a line between similarly situated groups that only fences out people whose indigence required court-appointed counsel. While anyone may owe attorney fees, it is only those whose poverty led to court-appointed counsel that can be denied expungement on the basis of the outstanding fees.
The key United States Supreme Court case on the issue before us is James v. Strange , 407 U.S. 128, 130, 92 S. Ct. 2027, 2029, 32 L.Ed.2d 600 (1972). In this case, the United States Supreme Court faced a statute that provided extra means to collect debt arising from appointment of counsel at state expense. Id. at 131, 92 S.Ct. at 2029-30. In the underlying criminal proceeding, the Kansas court appointed counsel to an indigent defendant pursuant to state law. Id. at 130, 92 S.Ct. at 2029. The defendant was obligated to repay to the state the amount expended. Id. If the debt went unpaid, a Kansas statute provided for a judgment to be docketed and for garnishment of wages or other methods of execution authorized by state civil procedure. Id. at 131, 92 S.Ct. at 2029-30. But unlike other judgment debtors, the person owing debt as a result of expenditures by court-appointed counsel was not allowed exemptions provided by the state civil procedure. Id. Thus, as the court explained,
*670 The indigent's predicament under this statute comes into sharper focus when compared with that of one who has hired counsel in his defense. Should the latter prove unable to pay and a judgment be obtained against him, his obligation would become enforceable under the relevant provisions of the Kansas Code of Civil Procedure. But, unlike the indigent under the recoupment statute, the code's exemptions would protect this judgment debtor.
Id. at 136-37, 92 S.Ct. at 2032.
A unanimous Court struck down the Kansas statute as a violation of equal protection. Id. at 141-42, 92 S.Ct. at 2035. The elements of punitiveness and discrimination in the Kansas statute, the Court explained, violated the rights of citizens to equal treatment under the law. Id. In its decision, the James Court likened the case to Rinaldi , 384 U.S. at 308-09, 86 S.Ct. at 1499-1500. James , 407 U.S. at 140-41, 92 S.Ct. at 2034-35. In Rinaldi , a New Jersey statute required only indigent defendants sentenced to confinement in state institutions to reimburse the state for the costs of a transcript on appeal. 384 U.S. at 308, 86 S.Ct. at 1499. The Rinaldi Court held, "To fasten a financial burden only upon those unsuccessful appellants who are confined in state institutions ... is to make an invidious discrimination." Id. at 309, 86 S.Ct. at 1500. Similarly, the James Court explained, "[T]o impose these harsh conditions on a class of debtors who were provided counsel as required by the Constitution is to practice ... a discrimination which the Equal Protection Clause proscribes." 407 U.S. at 140-41, 92 S.Ct. at 2034.
To be sure, the James Court recognized the state's interest in recouping expenses but dismissed it as a rational reason for the discrimination. Kansas had advanced the same argument presented here by the majority: "The challenged statute is rationally related to the end of attempting to raise money to help defray the costs of providing appointed counsel." Brief of Appellant at 18, James v. Strange , 407 U.S. 128, 92 S.Ct. 2027, 32 L.Ed.2d 600 (1972) (No. 71-11), 1972 WL 135745, at *18. While "recogniz[ing] that state recoupment statutes may betoken legitimate state interests," the James Court explained that "these interests are not thwarted by requiring more even treatment of indigent criminal defendants with other classes of debtors." 407 U.S. at 141, 92 S.Ct. at 2035. Further, the Court said, "[s]tate recoupment laws, notwithstanding the state interests they may serve, need not blight in such discriminatory fashion the hopes of indigents for self-sufficiency and self-respect." Id. at 141-42, 92 S.Ct. at 2035. In addition, although the James Court acknowledged that a state's claim to reimbursement may take precedence over private debts in some circumstances, "[t]his does not mean ... that a State may impose unduly harsh or discriminatory terms merely because the obligation is to the public treasury rather than to a private creditor." Id. at 138, 92 S.Ct. at 2033.
Other courts have reached similar results. For instance, in State v. Williams , 343 So.2d 35, 37-38 (Fla. 1977), the court examined a statutory provision that provided for a perpetual lien on debts incurred as a result of court-appointed counsel. Debtors with other types of debts were afforded the benefit of a limitations period. Id. This was an equal protection violation, the court said, because "similarly situated persons, i.e., debtors, are not treated in a similar fashion since only the judgment debtors [with court-appointed attorney fee debts] are to be perpetually liable for the debts incurred under this statute." Id. at 38.
In State v. Huth , 334 N.W.2d 485, 489-90 (S.D. 1983), the court considered a portion *671 of a criminal judgment and sentence revoking probation should the defendant discharge through bankruptcy an obligation to pay indigent counsel fees and costs of prosecution. Bankruptcy, of course, is a benefit that a state may, but need not, offer. See United States v. Kras , 409 U.S. 434, 446, 93 S.Ct. 631, 638, 34 L.Ed.2d 626 (1973) ("There is no constitutional right to obtain a discharge of one's debts in bankruptcy."). Yet the Huth court found an equal protection violation because "the portion of the judgment and sentence exposing appellant to revocation if he voluntarily discharges any legal obligation in bankruptcy unconstitutionally deprives appellant of rights and remedies afforded to other individuals." 334 N.W.2d at 490.
Iowa Code section 901C.2(1)(a )(2) fails scrutiny under the Equal Protection Clause of the Fourteenth Amendment under James , 407 U.S. at 141-42, 92 S.Ct. at 2035. And the reasoning in James , along with that in Williams , 343 So.2d at 38 and Huth , 334 N.W.2d at 489-90, is persuasive in finding a violation of article I, section 6 of the Iowa Constitution. As in all three cases, the statutes involved discriminate between debts owed because of court-appointed counsel and debts owed to private counsel. The discrimination is harsh:
[A] member of the general public-such as an employer doing an informal background check-could access our computerized docket and potentially draw inappropriate inferences from the mere presence of a criminal file relating to an individual, even though the criminal charges were dismissed or the individual was acquitted.
State v. Doe , 903 N.W.2d 347, 354 (Iowa 2017).
I would simply follow what I see are the dictates of James . Because section 901C.2(1)(a )(2) irrationally discriminates among similarly situated debtors, I would find it invalid as applied to the situation presented by Doe.[7]
IV. Conclusion.
I would reverse the district court judgment. And because all parties agree that Doe meets the requirements for expungement except the unconstitutional provision in Iowa Code section 901C.2(1)(a )(2), I would remand with instructions to grant her motion for expungement.

Doe's briefing does not challenge Iowa Code section 901C.2(1)(a )(2) based on discrimination between those who are reasonably able to pay court debts, including attorney fees, and those who are not reasonably able to pay such debts or fees. When pressed on this point at oral argument, counsel for Doe confirmed that the distinction drawn by Doe is between people who owe fees to privately retained attorneys and those who owe fees to court-appointed attorneys. Like the majority, I do not resolve the issue unchallenged by Doe.

Doe does not argue that Iowa Code section 901C.2 should be evaluated under a level of scrutiny higher than rational basis on the grounds that it, for example, classifies based on poverty or socioeconomic class, see, e.g. , Danieli Evans Peterman, Socioeconomic Status Discrimination , 104 Va. L. Rev. 1283, 1287 n.10 (2018) (collecting authorities advocating for higher level of scrutiny to legislation burdening the poor), or burdens a fundamental right to counsel, see, e.g. , Johnston v. Veterans' Plaza Auth. , 535 N.W.2d 131, 132 (Iowa 1995) (explaining that the court reviews challenged statutes burdening a fundamental right under a higher level of scrutiny but that failure to raise argument on level of scrutiny in initial brief waives the argument). Consequently, like the majority, I evaluate her challenge under rational basis review.

The majority says Doe is bringing a facial challenge. I disagree. "A facial challenge is one in which no application of the statute could be constitutional under any set of facts." Honomichl v. Valley View Swine, LLC , 914 N.W.2d 223, 231 (Iowa 2018). But see Janklow v. Planned Parenthood, Sioux Falls Clinic , 517 U.S. 1174, 1175, 116 S. Ct. 1582, 1583, 134 L.Ed.2d 679 (1996) (mem.) (Stevens, J.) (explaining that the "no set of circumstances" test is inconsistent with the standard for deciding facial challenges and with a wide array of legal principles). Doe takes issue with section 901C.2(1)(a )(2) insofar as it imposes a barrier to expungement for indigents who owe fees to court-appointed counsel but not for those who owe fees to private counsel. She does not allege that the provision is unconstitutional under all its applications. In fact, Doe distinguishes among the "court costs, fees, and other financial obligations" implicated by section 901C.2(1)(a )(2). For instance, she states, "Unlike court-appointed attorney fees, victim restitution can be owed by both indigent defendants and defendants able to retain counsel, and therefore does not raise the same equal protection implications."