STATE, Respondent v. KINDVALL, Appellant

(191 N.W.2d 289)

(File No. 10811. Opinion filed November 4, 1971)

**LeRoy S. Lassegard,** Mitchell, for defendant-appellant.

**Gordon Mydland,** Atty. Gen., **William J. Srstka, Jr.,** Asst. Atty. Gen., Pierre, **Thomas R. Pardy,** State's Atty., Miner County, Howard, for plaintiff-respondent.

RENTTO, Associate Judge.*

On July 6, 1969, Denver Kindvall killed Emil Zobel by shooting him with a rifle. When charged with the offense he entered pleas of not guilty and not guilty by reason of insanity. The jury found him guilty of murder and determined that he should be imprisoned for life. From the judgment and sentence entered on the jury's verdict he appeals.

The deceased at the time of the shooting was 44 years of age, the defendant 43. They were both engaged in farming, living on farms about a mile apart in Miner County. Both were married. They had been close friends for about 20 years. At the time of the incident defendant was working in Aberdeen, South Dakota, which is about 150 miles north from his farm home. He returned home for the weekends. On the weekend of the killing he returned to his home the evening of Thursday, July 3.

About 9 o'clock in the morning of July 6 the defendant drove up the driveway of the Emil Zobel home, where he had often visited, and stopped his car near their residence. He parked it so

---

* Retired Supreme Court Judge acting by appointment pursuant to SDCL 16-8-13.

that it was headed toward the exit from the yard. Ordinarily he parked his vehicle near the house, but not facing out to the road. Mrs. Zobel saw him drive in and told her husband. He and his 10-year-old son went outside to meet him. The defendant in a very rough manner of speech ordered the son to go back into the house. After a little delay the boy did as he had been ordered.

The defendant then got out of his car holding a small gun in his hand. As he approached Emil Zobel he told him he had just shot Emil's brother[1] and that he was going to shoot him because he and his brother had caused the defendant all the trouble he had. Emil pleaded with him not to do it. Because they didn't have a telephone, which the defendant knew, Mrs. Zobel went to her car to go for help but the defendant started shooting in her direction. She drove the car up to the door and ran into the house. A couple of shots hit the house and one a tire on her car, causing it to go flat.

When this was taking place she observed her husband running in a northerly direction away from the yard where he had been standing with the defendant. After remaining in the house with the other members of her family for a short time she stepped out onto the back porch. As she did the defendant ran by the house carrying a long gun. He went to his car and drove out of their yard to the highway and headed north. After he drove away the Zobels began searching for Mr. Zobel.

Mrs. Zobel found him lying in their hog lot several hundred yards north of where he had been standing with the defendant. He told her that the defendant had shot him with a big rifle and said he was paralyzed and thought he was done for. He gave her instructions as to reporting the incident and what she should do to protect the rest of the family. She did as directed.

When the officers came she took them to where her husband was. He was then dead. The coroner testified his death was

---

1. It is inferable from the record that Alvin Zobel, Emil's brother, had been killed earlier on the morning of July 6  The defendant had arisen that day before the other members of his family and drove away in his car. As his wife was in the process of preparing breakfast he returned and told her "Mama, call the sheriff. I hit Alvin with a gun and it discharged".

caused by a gunshot wound inflicted with a rifle. The defendant was next seen about 2 o'clock that afternoon fishing at Mina Lake near Aberdeen. He was taken into custody in that area a little later and returned to Miner County. The car which he was in when apprehended contained a 22 pistol and two rifles. He was not a witness at the trial, but on his behalf it is not denied that he did the killing.

In points designated I and II which the defendant combined for argument he states that: "The evidence is not sufficient to establish beyond a reasonable doubt findings of premeditation, nor a design to effect death, nor of sanity and mental capacity." On the issue of his mental capacity the jury were instructed as to our right and wrong rule of testing criminal responsibility. SDCL 22-3-1(4); Barnes, State ex rel. v. Behan, 80 S.D. 370, 124 N.W.2d 179. Defendant does not quarrel with the rule. In fact he made no objections to any of the instructions given and did not request any in addition to those proposed and given by the court.

In its case in chief the prosecution did not offer any lay or expert opinion testimony as to the sanity of the accused when the act was committed. He complains that the state should have done this and its failure to do so "had the effect of placing on Defendant the burden of establishing that he was irresponsible for his act". We shall first consider this contention.

■ While the prosecution must prove beyond a reasonable doubt that the accused was mentally capable of the criminal intent required to constitute the crime charged, it is not necessary for the state in the first instance to prove the sanity of the accused. State v. Waugh, 80 S.D. 503, 127 N.W.2d 429. As held in that case sanity and criminal responsibility are rebuttably presumed. Evidence of the contrary is required to make an issue. This complaint is without merit.

■ The Superintendent of the Yankton State Hospital, a qualified physician and psychiatrist, was appointed by the court as an expert witness. In giving his testimony he was first

examined by the defendant and then the prosecution. He was the only expert called as a witness. In urging the insufficiency of the evidence on the issue of sanity defendant leans heavily on what he had to say.

The expert diagnosed him as a schizophrenic, paranoid type, but went on to say that it was possible for such people to know the difference between right and wrong. He acknowledged that such persons are not all hospitalized and are quite common in our society. The thrust of his testimony was that he could not absolutely state whether he was competent or incompetent at the time of the killing. When asked whether the defendant knew right from wrong at that time he indicated that he had been unable to determine this. However, his was not the only evidence bearing on the issue.

■ In addition to the opinion evidence of experts and lay-men, a defendant's mental condition may be proved by circum-stantial evidence. Mental Disorders as a Criminal Defense — Weihofen, p. 312. The acts, conduct and declarations of the de-fendant, both prior and subsequent to the act charged, as well as at the time of its commission, are admissible to show his mental condition at the time of the act. There was much evidence of these in the record. In addition to that already set out herein there was the testimony of the two young ladies who visited with him at Mina Lake at about 2 p.m. on that day, and the officers who apprehended him and had him in custody until his return to Miner County. In our view it was more than legally sufficient to support the jury's determination that he was criminally responsible. There is also the testimony of his wife given as a witness for him concerning his activities the evening before the incident. These the jury could reasonably view as being in preparation for the killing.

■ The crime of murder with which the defendant was charged and of which he was convicted is defined in SDCL 22-16-4. It provides that:

"Homicide is murder when perpetrated without authority of law and with a premeditated design to effect the death of the person killed or of any other human being."

Concerning the required "premeditated design to effect the death of the person killed", SDCL 22-16-5 has this to say:

"A design to effect death, sufficient to constitute murder, may be formed instantly before committing the act by which it is carried into execution. Such design is inferred from the fact of killing unless the circumstances raise a reasonable doubt whether such design existed."

By its verdict the jury found the required premeditated design to exist. Its determination has ample support in the evidence herein related. State v. Buffalo Chief, 83 S.D. 131, 155 N.W.2d 914.

In point III he claims that the accused was prejudiced by improper remarks of the prosecutor in argument to the jury. The trial was bifurcated as permitted by SDCL 22-16-13. The first stage was to determine whether he was guilty of murder. Upon the jury finding him guilty of that offense the court, in the second stage, submitted to it the question of penalty. It recommended life imprisonment. Arguments to the jury were made on the trial of his guilt but not on the penalty feature. In arguing the matter of guilt, counsel for the state told the jury several times that it was asking only for life imprisonment. Defendant urges that such argument was improper and prejudicial to the defendant.

■ ■ It is improper for attorneys to comment or argue on matters outside the issues in the case. 23A C.J.S. Criminal Law § 1095; 53 Am.Jur., Trial, § 463. See also A.B.A. Project on Standards of Criminal Justice, Standard Relating to the Prosecution Function and Defense Function, § 5.8(d). Manifestly the statements complained of were irrelevant on the issue of guilt, the only matter that was before the jury in that stage of the trial. They were clearly improper. However, in view of the strong evidence against the defendant we are not persuaded that his

conviction was unduly influenced by such comments. In its instructions, read to the jury just before these statements were made, the court charged the jury that in determining the issue of guilt or innocence they were not to consider the penalty or punishment.

■ In his motion for a new trial, made two months after the verdict, defendant in like manner complains of other remarks made by the prosecution in argument. These involved claimed misstatements of the evidence and instructions. The record reveals that only one of these was objected to at the time it was made and as to it the jurors were instructed that they should rely on their own recollection of the evidence on this feature. If this remark did in fact misstate the evidence such error was cured by the court's prompt instruction.

■ The other remarks of which he here complains are not properly before us. It has long been the rule in this state that a defendant on appeal may not complain of alleged misconduct by the prosecution in argument to the jury unless such remarks were objected to when made and an admonition promptly requested. State v. Holburn, 23 S.D. 209, 121 N.W. 100; State v. Christensen, 46 S.D. 61, 190 N.W. 777; State v. Husman, 66 S.D. 530, 287 N.W. 30; State v. Nelson, 80 S.D. 574, 129 N.W.2d 54, and State v. Gayton, 83 S.D. 141, 155 N.W.2d 919. Had objections been made as required any impropriety in the questioned remarks could have been rendered harmless by prompt action on the part of the court.

His points IV and V necessitate a further statement of facts. Within a week after the incident, on request of defendant's counsel, he was sent to the state hospital for examination to determine if his mental condition was such that he should be tried. Its report was that he understood the charge for which he was to be tried and was capable of assisting his attorney in his defense. After his conviction he attempted suicide while confined in jail. On application of his counsel he was again sent to the state hospital for examination to determine whether or not he was

insane so that judgment and sentence should not be entered. It was the opinion of the hospital staff that he be returned to court for sentencing.

When he was in the hospital for the first examination in July and August of 1969 certain medications were prescribed. While their nature does not appear it is fair to infer that they were tranquilizers and soporifics. The reports of his examinations suggest that when taking these medications his mental or emotional condition improved and upon their discontinuance it would deteriorate. His counsel claim that during the trial they did not know that he had received such medications and thought that the drugs he had taken were for pain.

They assert that they didn't discover the true facts until January 1970, after his second examination. This is made the basis of the last ground in his motion for a new trial. The burden of it seems to be that if he were taking such medications during the trial, of which there is no proof, and which his counsel admits is only a possibility, the "Defendant was deprived of his right to have the jury see him in his real untreated mental and physical condition". He urges that a jury trying him should be apprised of this and not be "permitted to believe that Defendant's behavior was not his undrugged behavior on July 6, 1969."

Motions for new trials are addressed to the discretion of the trial court and we may not disturb its determination unless satisfied that it has abused that discretion. After a painstaking consideration of the entire record we are not persuaded that the court abused its discretion in denying the motion on this ground. It is based on a mere possibility.

Moreover, while not so labeled, the last ground of the application seeks a new trial because of newly discovered evidence. The grounds on which a new trial may be granted in criminal cases are stated in SDCL 23-50-2. The one concerning newly discovered evidence is paragraph (8) thereunder. It provides that a new trial may be granted:

"When new evidence is discovered material to the defendant, and which he could not with reasonable diligence have discovered and produced at the trial."

An important requirement of this provision is that reasonable diligence was exercised to discover the evidence before trial. Wilson v. Seaman, 15 S.D. 103, 87 N.W. 577; State v. Tappe, 53 S.D. 22, 219 N.W. 882. In urging this ground for a new trial there is no showing that this was done.

Affirmed.

BIEGELMEIER, P. J., and HANSON, WINANS and WOLL-MAN, JJ., concur.