STATE of South Dakota, Plaintiff
and Appellee,

v.

William J. BAKER, Defendant
and Appellant.

No. 15570.

Supreme Court of South Dakota.

Argued Sept. 1, 1987.

Decided April 26, 1989.

Janine Kern, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Roger A. Tellinghuisen, Atty. Gen., Pierre, on the brief.

Donna L. Hallberg and Michael J. Butler, Minnehaha County Public Defender, Sioux Falls, for defendant and appellant.

MORGAN, Justice.

William J. Baker (Baker) appeals his convictions of guilty but mentally ill (GBMI) following jury trial on two counts of aggravated assault (SDCL 22–18–1.1(2) and (4)). He was also adjudged guilty on a Part II Information charging him with being an habitual offender. Baker was sentenced to eight years in the penitentiary on the first count and twelve years on the second count. We affirm in part and reverse and remand in part.

Baker, who admitted to being an abuser of alcohol and drugs, attempted to quit "cold turkey" the use of all chemical substances. Soon thereafter he began experiencing behavioral changes and sought help by entering a widely advertised private treatment facility in Sioux Falls. He was forced to leave the facility when disciplinary problems arose.

Baker next voluntarily checked himself into the acute psychiatric ward at McKennan Hospital in Sioux Falls. After a few hours, he asked a nurse if he could leave. The nurse informed Baker that he could leave voluntarily, but that she would have to get a doctor's "okay" first. There was a delay of over two hours during which time Baker began pacing up and down the hallway with a blanket wrapped around his shoulders. As time passed, and no release was forthcoming, Baker became increasingly agitated. He made comments about his mother and his family being dead. He tore a woman's picture off a bulletin board because he believed it was his mother's picture. After observing these incidents and his increasing agitation, the nurse called security for assistance.

Larry Gullickson (Gullickson), an off-duty policeman working security, responded to the call. Upon being advised of the situation, including Baker's voluntary status, Gullickson, for some unknown reason, placed a call to the county jail to determine if Baker had been placed on a 24–hour involuntary hold. In the meantime, Baker, who had been standing at the nurse's station since Gullickson's arrival, stated that he was not going to wait for a doctor, pounded his fist on the counter, ran over to Gullickson and attacked him, first by beating him with his fists and then by taking the phone receiver from Gullickson and striking him in the face with it. Baker was finally subdued, placed in seclusion, and transported to the county jail.

Throughout the proceedings below and before this court, Baker has been represented by court-appointed counsel from the staff of the Minnehaha County Public Defender's Office. Baker, on appeal, raises seven issues, which we amalgamate into the following four:

1. Sufficiency of the evidence to sustain the verdict of "guilty but mentally ill" under statutory requirements.

2. Constitutionality of SDCL 23A–26–14 as a violation of Baker's due process rights, equal protection rights and right to freedom from cruel and unusual punishment under both the federal constitutional amendments and the state constitution.

3. Failure to dismiss the Part II habitual offender information.

4. The propriety of the trial court's jury instruction on the burden of proof in an insanity defense; or, stated another way, absent having raised an instruction issue by proper objection at the trial level, does such issue rise to the level of plain error to make it reviewable on appeal?

In the discussion of the issues in this appeal, several recent legislative enact-

ments will come into play. For the purpose of clarity, we will begin with a summary of the pertinent portions thereof with identifiers that will be used thereafter.

Chapter 174 of the 1983 South Dakota Session Laws first introduced the verdict of "guilty but mentally ill" (hereafter GBMI) into South Dakota law. That enactment rewrote the laws on mental illness defense, both substantively and procedurally. What had been previously defined as "mental illness" was redefined as "insanity" and a new definition was created for "mental illness." A plea of GBMI was added to the list of permissible pleas: guilty, not guilty, not guilty by reason of insanity and nolo contendere. One provision, now codified as SDCL 23A–26–14 (hereafter the GBMI verdict statute), provided that if a defendant raised an insanity plea he could be found GBMI if the jury found (1) that he was guilty of the offense; (2) that he was mentally ill when he committed the offense; and (3) that he was not insane at the time when he committed the offense. Another provision, now codified as SDCL 23A–25–13 (hereafter the GBMI instruction statute), mandated instructions to the jury that to return a GBMI verdict they shall find that defendant committed the offense and that at the time of the offense he was not insane but was mentally ill. The enactment also provided that upon a GBMI verdict or plea, the court could impose any sentence which could be imposed upon a plea or verdict of guilty to the same charge (now codified as SDCL 23A–27–38).

Chapter 192 of the 1985 South Dakota Session Laws enacted a considerable revision of the criminal procedures in general and had some impact on the insanity defense. SDCL 22–3–1 was amended by deleting subsection (3), "[p]ersons who, at the time of committing the act charged against them, were insane[,]" from the list of persons who were incapable of committing a crime. Section 11, now codified as SDCL 22–5–10, made insanity an affirmative de-

fense to be proven by clear and convincing evidence.

Finally, in 1986, the legislature enacted Chapter 194 which amended the GBMI verdict statute by deleting "(3) The defendant was not insane when he committed the offense[,]" from the requirement for the GBMI verdict statute. It did not, however, remove that same consideration from the requirements of the GBMI instruction statute, which mandated instructing the jury to make such a finding in order to return the GBMI verdict.

We first examine Baker's sufficiency of the evidence issue. He asserts two arguments. First, he contends that there was insufficient evidence to prove the specific intent element of the offense of aggravated assault. Second, he contends that there was insufficient evidence to prove that he was mentally ill, as opposed to insane, at the time of the commission of the crime. Actually, the two are intrinsically interwoven as they both go to Baker's mental capacity at the time that he committed the offense.

It is Baker's position that the evidence of the two psychiatric witnesses and the lay persons negated the possibility of specific intent on his part. He quotes Dr. Bean, the State's psychiatrist, as saying that "Baker was not capable of understanding the wrongfulness of his acts when he committed the two assaults alleged." Also, he quotes Dr. Pesce, his psychiatrist, as testifying that he "was not capable of knowing the wrongfulness of his act." Baker further urges that the testimony of the nurses who were present at various times described his "bizarre" behavior.

State counters with the arguments for sufficiency of the evidence. They would discount the testimony of their expert, Dr. Bean, because he had merely examined Baker for one hour some two and a half months after the incident and because he had based his diagnosis in part upon information given him by Baker.[1] State further

1.  We find nothing in the record to indicate that any information given the doctor by Baker was inaccurate. Baker's history of drug and alcohol abuse, his attempt to quit "cold turkey," and his

attempt to get help from a nationally advertised treatment program prior to his entry into McKennan Hospital are not disputed on this

seeks to cast doubt on Dr. Pesce's testimony by pointing out that, in cross-examination, the doctor had admitted he was unsure of his diagnosis and that no psychiatrist could be sure of a diagnosis "if they were not there at the time and didn't conduct an examination at the time." Apparently, State would have us reject the standards of reasonable medical or psychiatric probability to which we have heretofore adhered. Additionally, State further views the testimony of the lay witnesses as entirely different than as viewed by Baker. Lastly, State points to Baker's own testimony as evidence that he knew what he was doing and the wrongfulness of his acts.

This court's standard of review has long been as follows:

In determining the sufficiency of evidence on appeal, the question presented is whether or not there is evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilt beyond a reasonable doubt. In making such a determination, this court will accept that evidence, and the most favorable inferences that can be fairly drawn therefrom, which will support the verdict.

State v. Banks, 387 N.W.2d 19, 27 (S.D. 1986) (quoting State v. West, 344 N.W.2d 502 (S.D.1984)); State v. Big Head, 363 N.W.2d 556 (S.D.1985). With respect to expert testimony, we have also held that a jury is at liberty to evaluate and weigh an expert's testimony in arriving at its verdict. State v. Shell, 301 N.W.2d 669 (S.D.1981). A jury is not bound to accept the expert's testimony as conclusive and they may disregard it if they so choose. State v. Swallow, 350 N.W.2d 606 (S.D.1984). As a Michigan court of appeals noted in this regard:

Triers of fact are not bound to accept opinion testimony, however expert and authoritative, because opinion testimony is not of the highest order. (Citation omitted.) If, under all the testimony in this case, the jury was compelled to accept questionable opinions of fact then

record. State only attempts to cast a shadow by

the doctors, not the jury, would have been determining the facts.

People v. English, 29 Mich.App. 36, 48-9, 185 N.W.2d 139, 147 (1970).

■ This is one of the closest cases on this issue that we have had occasion to review recently. Viewing the evidence without regard to the expert testimony, as the jury obviously did, we find that Baker, in his testimony, gave considerable evidence from which the jury could have made it's determination that he knew what he was doing and the wrongfulness of such acts. Further, the testimony of the other witnesses as to his bizarre behavior leading up to and following the incident, in and of itself, would be sufficient basis for the jury determination that he was mentally ill.

We next examine the constitutional issues raised by Baker. He first attacks the GBMI statute on the grounds of deprivation of due process in violation of his Fifth Amendment rights under the United States Constitution and Article VI, Section 2 of the South Dakota Constitution. He then claims that the statute violates his rights to equal protection under the Fourteenth Amendment of the United States Constitution and Article VI, Section 18 of the South Dakota Constitution. Finally he claims that the statute deprives him of his right to be free of cruel and unusual punishment under the Eighth Amendment of the United States Constitution and Article VI, Section 23 of the South Dakota Constitution.

We will discuss these claims in more detail, but we first recall our scope of review in constitutional issues. This court will uphold legislative enactments unless they are clearly and unmistakably unconstitutional. Big Head, supra; State v. Morrison, 341 N.W.2d 635 (S.D.1983); State v. Crelly, 313 N.W.2d 455 (S.D.1981). All presumptions are in favor of the constitutionality of a statute and continue so until the contrary is shown beyond a reasonable doubt. State v. Bonrud, 393 N.W.2d 785 (S.D.1986); Big Head, supra.

In State v. Robinson, 399 N.W.2d 324, 326-27 (S.D.1987), we examined the claimed

innuendo in its brief.

violation of Robinson's due process rights by the GBMI statute and the allegation of cruel and unusual punishment thereunder. Baker tells us that his arguments are different than those considered in Robinson.

■ We first examine the due process claim. Baker argues that the GBMI statute allows a trier to impermissibly find guilt on a middle ground between not guilty by reason of insanity (NGRI) and guilty, thus depriving a defendant of his right to effectively utilize the insanity defense. For the most part, his argument seems to be a public policy argument, best addressed to the legislature. But we do perceive a constitutional argument on the theory of vagueness, specifically that the statutory definitions for insanity [2] and for mental illness [3] are so vague that men of common intelligence must guess at their meaning.

This court has long established that:

A crime must be statutorily defined with definiteness and certainty. A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process. A criminal statute must give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden.

Bonrud, 393 N.W.2d at 788 (quoting Big Head, 363 N.W.2d at 559); see also State v. Primeaux, 328 N.W.2d 256, 258 (S.D.1982).

The distinction between sanity and mental illness rests upon a finding of knowledge or intent. "Insane people are legally incapable of committing crimes, but those people who are merely 'mentally ill' may be held criminally responsible." Robinson, 399 N.W.2d at 325. In other words, a person may be mentally impaired and still be capable of knowing the wrongfulness of his acts. We fail to find the wording of the definitional statutes upon which the GBMI statute relies to be ambiguous or uncertain.

We also decline to adopt Baker's theories that GBMI is a compromise verdict or can be viewed as a lesser-included offense. First, a GBMI verdict is based upon a different finding than is a NGRI verdict. Under a NGRI verdict, there must be a showing that Baker was incapable of knowing the wrongfulness of his act. Under the GBMI verdict, there must be a showing that Baker was capable of knowing the wrongfulness of his act. And, under a guilty verdict, Baker must be found to have been acting under no mental infirmity and with knowledge of the wrongfulness of his act. We adopt the holding of the Michigan Appellate Court in People v. Bailey, 142 Mich.App. 571, 575, 370 N.W.2d 628, 630 (1985), wherein that court stated: "[S]uch instructions, by disclosing the full spectrum of criminal responsibility, may afford the jurors a better understanding of the gradation of responsibility in the law ... and thereby help their assessment of the case." We find no due process violation.

■ We next consider Baker's contention that the GBMI statute violates his right to equal protection of the laws in that it places him in a suspect class of people who assert the defense of insanity. The federal equal protection clause embodied in the Fourteenth Amendment

denies to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. A classification 'must be reasonable, not arbitrary, and must rest upon some

---

**2.** SDCL 22-1-2(20) provides:

'Insanity,' the condition of a person temporarily or partially deprived of reason, upon proof that at the time of committing the act charged against him, he was incapable of knowing its wrongfulness, but not including an abnormality manifested only by repeated unlawful or antisocial behavior[.]

**3.** SDCL 22-1-2(24) provides:

'Mental illness,' a substantial psychiatric disorder of thought, mood or behavior which affects a person at the time of the commission of the offense and which impairs a person's judgment, but not to the extent that he is incapable of knowing the wrongfulness of his act. Mental illness does not include abnormalities manifested only by repeated criminal or otherwise antisocial conduct[.]

ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.'

*Behrns v. Burke,* 89 S.D. 96, 101, 229 N.W. 2d 86, 88 (1975) (quoting *Reed v. Reed,* 404 U.S. 71, 76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225, 229 (1971)).

Article VI, Section 18 of the South Dakota Constitution guarantees equal protection of the laws for all citizens of the state. In *City of Aberdeen v. Meidinger,* 89 S.D. 412, 415, 233 N.W.2d 331, 333 (1975), we adopted a two-prong test to determine whether the equal protection clause has been violated.

The first part of the test is whether the statute does set up arbitrary classifications among various persons subject to it. The second part of the test is whether there is a rational relationship between the classification and some legitimate legislative purpose.[4]

In *Meidinger,* we also said:

'Equal protection does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made.' (Citation omitted.)

*Id.,* 89 S.D. at 416, 233 N.W.2d at 334.

Baker urges that since he is deprived of a fundamental right, that is, to present his defense of insanity, the state interest must meet a strict scrutiny analysis rather than the rational basis analysis. We disagree. Baker cites us to no decisions of the United States Supreme Court, nor are we aware of any, which have held insane or mentally ill persons to be members of a suspect class. Further, all persons who plead not guilty by reason of insanity are similarly circumstanced in that they are governed by the GBMI statute. *Eischen v. Minnehaha County,* 363 N.W.2d 199 (S.D.1985). As in *Eischen,* the equal protection test to be applied in this case is that for non-suspect classifications. "When no suspect classification is involved or fundamental right infringed, any 'rational basis may justify the classifications which have been made.'" *Prostrollo v. University of South Dakota,* 507 F.2d 775, 780 (8th Cir.1974) (citing *Johnson v. Robison,* 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974)).

As stated in *Skinner v. State of Oklahoma,* 316 U.S. 535, 540, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655, 1660 (1942):

[A] State is not constrained in the exercise of its police power to ignore experience which marks a class of offenders or a family of offenses for special treatment. Nor is it prevented by the equal protection clause from confining 'its restrictions to those classes of cases where the need is deemed to be clearest.' ... '... the law does all that is needed when it does all that it can, indicates a policy, applies it to all within the lines, and seeks to bring within the lines all similarly situated so far and so fast as its means allow.' (Citations omitted.)

The GBMI statute is based on a valid distinction between a person who is legally insane, meaning that he is incapable of knowing the wrongfulness of his acts, and a person who is mentally impaired, but aware of the wrongfulness of his acts. It is also a laudable and legitimate purpose to provide treatment for those convicted but suffering from mental illness. We find no deprivation of Baker's equal protection rights under either the federal or the state constitutions.

■ Lastly, we examine Baker's claim that the GBMI statute deprives him of his right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution and Article VI, Section 23 of the South Dakota Constitution. Baker's argument on this issue is rather obfuscated but appears to center around Baker's right to treatment and, more importantly, that

---

4. This is the rational basis test that was appropriate to the analysis in *City of Aberdeen v. Meidinger,* 89 S.D. 412, 233 N.W.2d 331 (1975). In *Dorian v. Johnson,* 297 N.W.2d 175, 178 (S.D. 1980), where the rational basis test was not appropriate, we restated the second prong thus: "The second part of the test is the application of the appropriate standard of review to this arbitrary classification."

such treatment must be focused on making him healthy enough to function in society, as opposed to merely stopping the pain symptomatic of his illness.

Just as in *Robinson, supra*, Baker's argument is basically one of right to treatment, not refusal of treatment. The record does not reflect that he needs further treatment, or that he was denied treatment. As we noted in *Robinson*, 399 N.W.2d at 327, "[t]he Legislature has provided anyone committed under SDCL 23A–26–12 [or 23A–46–10] may test by habeas corpus the illegality of his detention. SDCL 23A–46–6." As the United States Supreme Court said in *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976):

> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain', ... proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. (Citation omitted.)

429 U.S. at 104–5, 97 S.Ct. at 291, 50 L.Ed. 2d at 260.

> In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment.

429 U.S. at 106, 97 S.Ct. at 292, 50 L.Ed.2d at 261. We adhere to our holding in *Robinson* on this issue.

As his next issue, Baker contends that the trial court erred in failing to dismiss the Part II Information charging him as an habitual offender. Specifically he argues that the sentence on a GBMI verdict cannot be enhanced under the provisions of SDCL 22–7–7, the habitual offender statute.[5]

■ We find SDCL 23A–27–38 to be dispositive of this issue. SDCL 23A–27–38 deals specifically with the sentence a defendant is to receive if found GBMI. It provides, in pertinent part: "If a defendant is found 'guilty but mentally ill' ... the court shall impose any sentence which could be imposed upon a defendant pleading or found guilty of the same charge." This statute expressly provides that any sentence which could be imposed for the conviction of a felony may be imposed upon a defendant found GBMI. Any sentence which could be imposed for the conviction of a felony includes the enhancement provisions in SDCL 22–7–7.

■ Under the requirements of the GBMI verdict, Baker was found to have been guilty of the aggravated assaults, Class 3 felonies. This satisfies the requirement of SDCL 22–7–7 that defendant be convicted of the principal felony, in addition to one or two prior felonies, for enhancement. Therefore, the trial court did not err in denying Baker's motion to dismiss the Part II Information and we affirm as to this issue.

In the course of the oral argument on the appeal, Baker's counsel suggested that there existed a serious error in the trial court's Instruction No. 25 in that it failed to inform the jury that if it found the defendant presented clear and convincing evidence of insanity, the presumption of sanity disappears and the burden of proof is on the State to prove defendant's sanity beyond a reasonable doubt. As stated ear-

---

5. SDCL 22–7–7 provides:

When a defendant has been convicted of one or two prior felonies under the laws of this state or any other state or the United States, in addition to the principal felony, the sentence for the principal felony shall be enhanced by changing the class of the principal felony to the next class which is more severe. The determination of whether a prior offense is a felony for purposes of this chapter shall be determined by whether it is a felony under the laws of this state or under the laws of the United States at the time of conviction of such prior offense. For the purpose of this section, if the principal felony is not classified it shall be enhanced to the class which has an equal maximum imprisonment. For the purposes of this section, if the maximum imprisonment for the principal felony falls between two classifications, the principal felony shall be enhanced to the class which has the less severe maximum authorized imprisonment.

lier, Baker was represented at trial by the Minnehaha County Public Defenders Office. Baker's counsel had failed to object to the instruction at trial nor was it raised as an issue on appeal. Counsel at argument was also a member of the public defender's staff, but had not tried the case, nor had he participated in briefing the appeal. The court found his suggestion sufficiently appealing to direct the parties to brief the issues of plain error and the adequacy of the instruction. Those issues were argued the following month.

We first examine the propriety of considering the instruction under the plain error statute. "Plain error or defects affecting substantial rights may be noticed although they were not brought to the attention of a court." SDCL 23A–44–15. We have held that this rule is to be applied cautiously and only in exceptional cases. *State v. Dornbusch*, 384 N.W.2d 682 (S.D.1986); *State v. Sheridan*, 383 N.W.2d 865 (S.D. 1986); *State v. West*, 344 N.W.2d 502 (S.D. 1984). In *State v. Breed*, 399 N.W.2d 311 (S.D.1987), we considered the failure of the trial court to instruct the jury on circumstantial evidence to clearly and substantially prejudice the defendant. It appears to us that a failure to properly instruct the jury on the burden of proof on the issue of insanity would likewise clearly and substantially prejudice Baker, if such were the case.

The pertinent part of Instruction No. 25, to which Baker takes exception, is as follows:

If you should find from the evidence that the state has proven beyond a reasonable doubt that the defendant committed the offenses alleged, you must first determine whether the defendant was legally insane when he committed the offenses. *If you should find that the defendant has not proven by clear and convincing evidence that he was insane at the time of committing the offense,* you must next consider whether he was mentally ill when he committed the offense. (Emphasis added.)

It is Baker's contention that the instruction erroneously puts the burden of proving his insanity defense on him, rather than on the State. He relies upon our holding in *State v. Closs*, 366 N.W.2d 138, 142–43 (S.D.1985) for the proposition:

'Whenever evidence of the degree of insanity constituting a defense is presented, the presumption of sanity disappears and *the accused's mental capacity to commit the act for which he is charged becomes an essential element to be proved by competent evidence beyond a reasonable doubt.'* (Emphasis added.) (Citation omitted.)

He also cites to *State v. Standing Soldier,* 299 N.W.2d 568 (S.D.1980); *State v. Romero,* 269 N.W.2d 791 (S.D.1978); *State v. Kindvall,* 86 S.D. 91, 191 N.W.2d 289 (1971). The issue is the applicability of these decisions in light of intervening legislation. See the brief synopsis of the several legislative actions above.

State argues that the 1983 legislation retained, but redefined, the insanity defense and interposed the GBMI defense. At that time, the burden of proof upon the State to overcome defendant's insanity defense remained the same. State argues further, however, that the 1985 legislation which deleted subsection (3) of SDCL 22–3–1 and enacted SDCL 22–5–10 placing the affirmative burden of proof on defendant, together with the 1986 legislation deleting the finding against insanity on a GBMI verdict, demonstrates the legislative intent to alter the burden of proof in an insanity defense in a manner contrary to our decisions. Thus, State argues, the instruction was correct.

■ Baker does not concede that the legislature evidenced a clear intent to reverse our prior decisional law upon which he so strongly relies. In this vein, he points to the failure of the 1986 Legislature to repeal the finding of sanity requirement in the GBMI instruction statute. State argues that it was an oversight and that requirement should be considered as repealed by implication along with the repeal of subsection (3) in the GBMI verdict statute. Baker urges that the repeal by implication issue is not applicable because the 1986 amendment was not effective until

July 1, 1986, some three months after the date of the commission of the offense and subsequent also to the date of his arraignment on the charges. The issue becomes then: Is the 1986 enactment retroactive as to antecedent events or is the requirement of subsection (3) of SDCL 23A–26–14 still operative as to this case?

This court has long held that statutes affecting remedy or procedure as opposed to those affecting substantive rights are given retroactive effect. *Brookings County v. Sayre*, 53 S.D. 350, 220 N.W. 918 (1928). Since the burden of proof in a criminal trial would appear to us to be a procedural issue, rather than a substantive one, we then look to the application of the constitutional prohibition against ex post facto laws. Ex post facto laws are always retroactive, but not all retroactive laws are ex post facto laws. Black's Law Dictionary page 707 (3d ed. 1944). The United States Constitution prohibits the enactment of ex post facto laws by the states [6] and by the congress [7]. An ex post facto law has been defined as one: (a) which makes an action done before the passing of the law, and which was innocent when done, criminal, and punishes such action, or (b) which aggravates a crime, or makes it greater than it was when committed, or (c) which changes the punishment and inflicts a greater punishment than the law annexed to the crime when it was committed, or (d) which alters the legal rules of evidence, and receives less or different testimony than the law required at the time of the commission of the offense, in order to convict the offender. *Black's*, at 706. "Laws that alter rules of criminal procedure but do not affect the substantive rights of the defendant are not violative of the ex post facto clause...." Nowak, Rotunda & Young, *Constitutional Law* § 11.9(b) (3d ed. 1986).

> Just what alterations of procedure will be held to be of sufficient moment to transgress the constitutional prohibition cannot be embraced within a formula or stated in a general proposition. The distinction is one of degree. But the constitutional provision was intended to secure substantial personal rights against arbitrary and oppressive legislation (citations omitted) and not to limit the legislative control of remedies and modes of procedure which do not affect matters of substance. (Citation omitted.)

*Beazell v. State of Ohio*, 269 U.S. 167, 171, 46 S.Ct. 68, 69, 70 L.Ed. 216, 218 (1925).

If we narrowly viewed the issue as whether the repeal of SDCL 23A–26–14(3) repeals by implication the identical provision in SDCL 23A–25–13 so as to change the burden of proof, we might be inclined to say no. Even though they are both procedural statutes, as are all statutes in SDCL Title 23A, the effect is to alter the requirements of testimony other than they were at the time of the commission of the crime. However, the issue is a broader one. The amendment to the substantive law making insanity an affirmative defense and establishing the clear and convincing burden of proof was enacted in 1985 and was effective months before the commission of the offense. In effect, the 1986 amendment was merely a rather incomplete housekeeping attempt to align the procedural statutes with the substantive. In effect, the 1985 enactment repealed by implication the procedural provisions for a jury determination that the defendant was not insane. Since it preceded the offense, it cannot be viewed as ex post facto.

Finally, having affirmed the trial court on all of the issues raised by Baker, we come to an aspect of this case that has troubled us throughout. We raise it *sua sponte* under both the plain error doctrine and the doctrine of correction of constitutional error.

> [The plain error rule, SDCL 23A–44–15,] was adopted from Federal Rule of Criminal Procedure 52(b) and does not significantly deviate from the language of its federal counterpart. A *sua sponte* application of the plain error rule, however, is

**6.** United States Constitution Article I, Section 10: "No state shall ... pass any ... ex post facto law."

**7.** United States Constitution Article I, Section 9: "No ... ex post facto law shall be passed."

not the usual manner in which the statute is invoked. Ordinarily, plain error is urged on appeal by counsel who discovers what appears to have been a substantial error committed below, but to which no objection was made. 3A C. Wright, Federal Practice and Procedure (Criminal) § 856 (2d ed. 1982). Application of the rule is not so limited however, and under Rule 52(b) an appellate court may take notice of an error on its own counsel. *United States v. Adams*, 634 F.2d 830 (5th Cir.1981); *United States v. Brown*, 508 F.2d 427 (8th Cir.1974), *overruled on other grounds, United States v. Flum*, 518 F.2d 39 (8th Cir.1975); C. Wright, *supra. See also Silber v. United States*, 370 U.S. 717, 82 S.Ct. 1287, 8 L.Ed.2d 798 (1962); *United States v. Atkinson*, 297 U.S. 157, 56 S.Ct. 391, 80 L.Ed. 555 (1936).

*State v. Jones*, 406 N.W.2d 366, 368 (S.D. 1987). Additionally, we may decide a constitutional question *sua sponte. Id.; State v. Bonrud*, 393 N.W.2d 785 (S.D.1986); *Bayer v. Johnson*, 349 N.W.2d 447 (S.D. 1984).

We recently stated in *State v. Adams*, 418 N.W.2d 618, 625 (S.D.1988):

The United States Supreme Court has held that the constitutional prohibition against double jeopardy consists of three separate guarantees. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). The third guarantee 'protects against multiple punishments for the same offense.'

The aggravated assault statute, SDCL 22–18–1.1, provides in pertinent part:

Any person who:

. . . .

(2) Attempts to cause, or knowingly causes, bodily injury to another with a dangerous weapon;

. . . .

(4) Assaults another with intent to commit bodily injury which results in serious bodily injury; . . .

. . . .

is guilty of aggravated assault. Aggravated assault is a Class 3 felony.

The several acts that may constitute the offense are stated in the disjunctive. As we said in *State v. Likness*, 386 N.W.2d 42, 43 (S.D.1986):

'The rule seems to be well settled that, when a penal statute mentions several acts disjunctively, and prescribes that each shall constitute the *same offense* and is subject to the same punishment, an information may charge any and all such acts conjunctively as constituting a single offense.' (Citation omitted.) (Emphasis in original.)

Furthermore, we said:

It is permissible under [SDCL 23A–6–23] to charge in separate counts the commission of the same offense in different ways in order to meet the evidence which may be adduced.... If a defendant is convicted on two counts, relating to a single offense a general sentence may be imposed. (Citations omitted.)

*State v. Teutsch*, 80 S.D. 462, 468, 126 N.W.2d 112, 116 (1964).

■ We determine that SDCL 22–18–1.1 does not contain four separate offenses, but rather describes one violation that may be established in four different ways. It then becomes obvious that Baker has been unconstitutionally sentenced under each of two counts which constitute one offense of aggravated assault. Each of the counts describe a different method of accomplishing the offense, but there was only one offense committed. To punish Baker twice for the one offense is an obvious violation of his right to be free from double jeopardy. It is not necessary to reverse the convictions but merely to reverse the sentence and remand for resentencing.

We affirm in part, reverse and remand in part.

WUEST, C.J., and MILLER, J., concur.

HENDERSON and SABERS, JJ., dissent.

HENDERSON, Justice (dissenting).

I respectfully dissent. Reference is made to my two dissenting opinions in *State v. Robinson*, 399 N.W.2d 324, 327–30 (S.D.1987), and *Robinson v. Solem*, 432 N.W.2d 246, 252–58 (S.D.1988), regarding

constitutionality of our "Guilty But Mentally Ill" statutes.

As to that special writing reflecting that SDCL 22–5–10 is unconstitutional, I disagree, as allocation to the defendant of the burden of proving insanity is constitutional. *See Leland v. Oregon,* 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952); *United States v. Freeman,* 804 F.2d 1574 (11th Cir.1986); *United States v. Amos,* 803 F.2d 419 (8th Cir.1986).

SABERS, Justice (dissenting).

### Unconstitutional Shifting of Burden of Proof.

I would reverse and remand for a new trial because the trial court's instructions improperly required Baker to prove his insanity by clear and convincing evidence under SDCL 22–5–10. This is plain error as the statute is unconstitutional. SDCL 23A–44–15 provides "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of a court." *State v. Breed,* 399 N.W.2d 311 (S.D.1987); *State v. Brammer,* 304 N.W.2d 111 (S.D.1981).

The fatal constitutional defect of SDCL 22–5–10 is that it places upon the defendant "the burden of proving the defense of insanity by clear and convincing evidence." The State cannot constitutionally require a defendant to do more than raise a reasonable doubt as to his sanity, i.e., the defendant's burden of persuasion cannot exceed raising "a reasonable doubt." It is an unconstitutional invasion of the presumption of innocence to exceed this point. S.D. Const., art. VI § 2.

The State must prove each and every element of the crime charged beyond a reasonable doubt. Most serious crimes contain an element which overlaps sanity. Therefore, if the defendant raises a reasonable doubt as to his sanity, it becomes constitutionally inconsistent and impossible for the State to prove the overlapping element of the crime *beyond* a reasonable doubt.

Therefore, the statute poses a very great danger for jury confusion and for conviction by less than beyond a reasonable doubt and is unconstitutional. S.D. Const., art. VI § 2; *Robinson v. Solem,* 432 N.W. 2d 246, 251 (S.D.1988) (Sabers, J., concurring in result in part and dissenting in part).