2005 SD 13

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Sever Sebastian CALIN, Defendant and Appellant.**

No. 23132.

Supreme Court of South Dakota.

Considered on Briefs Oct. 4, 2004.

Decided Jan. 26, 2005.

Lawrence E. Long, Attorney General, Patricia Archer, Assistant Attorney General, Pierre, South Dakota, Attorneys for plaintiff and appellee.

Gary W. Conklin, Sioux Falls, South Dakota, Attorney for defendant and appellant.

MEIERHENRY, Justice.

[¶ 1.] Sever Calin appeals his convictions for first degree burglary, attempted first degree burglary, and two counts of injury to property in the second degree. Calin waived a jury trial and pleaded not guilty by reason of insanity. The trial court found him guilty but mentally ill on

all charges. Calin appeals claiming it was error for the trial court to reject his insanity defense.

## FACTS

[¶ 2.] Calin's convictions stem from an incident on December 25, 2002, where he broke into and damaged an apartment across the street from where he lived with his mother. According to Calin's mother, prior to the incident in question Calin "had been acting strange for several days, staying up all night and acting like an animal." Then at about 4 a.m. on December 25, 2002, Calin left his residence and crossed the street to the apartment house. The house contained two apartments, one on the first floor and one on the second floor, both with separate ground-floor entryways. He first unsuccessfully attempted to kick open the door to the second floor apartment. In the process he jammed the lock, which the occupant did not discover until the next morning. Calin then successfully kicked open the door to the first floor apartment. The tenant was not in the apartment at the time he broke in. While in the apartment, Calin turned on the television set, pulled a hand-railing slightly away from the wall, broke a bathroom faucet, and cut computer wires. He selected from the back of the tenant's cupboard a set of 6 Winnie the Pooh glasses (leaving undisturbed the other glassware in the cupboard) and a Winnie the Pooh cookie jar. He broke and scattered the broken glass throughout the apartment. Additionally, he carved a rudimentary arrow into the living room wall and put two other small arrow-like markings on the door of the apartment in what appeared to be blood. Calin had cut his hand during the incident causing small amounts of scattered or smeared blood throughout the apartment, including the tenant's bedroom. Nothing was missing from the apartment.

[¶ 3.] The second floor tenants called the police when they were unable to get out of their apartment because of the jammed door. When the police arrived to investigate at approximately 8 a.m., they noticed Calin standing in the yard across the street yelling at them. Calin appeared unkempt and stood barefoot in the cold. One of the officers questioned Calin about where he lived. In response to the officer's questions, Calin told the officer the lady let him sleep out front. The officer awakened the "lady" in the house, who identified Calin as her son who lived with her. His mother also described Calin's abnormal behavior the prior evening. The officer retrieved Calin's shoes from the home and was able to match them with prints left at the scene. Because of Calin's nonsensical comments and strange demeanor, the officer asked if he was on medication. The officer testified about his conversation with Calin as follows:

> He told me, or he asked me if I believed in God, and he made several key remarks as to religion and I answered him that I did. And he asked me if I wanted to hear his sins and confessions. At some point he said that he was it or he asked me what I was doing there, who broke into the house? So I asked him to tell me if he knew anything about it and he said he was the person who broke in the house, that there was broken glass inside and he was looking for his mouse that someone had stolen.... I asked him if he knew the people who lived there and he said he did not. I read him his Miranda rights, at which time he did not acknowledge the reading of them. He told me that if I didn't believe in God, then he has said everything he was going to say to me.

The officer arrested Calin and took him to the Minnehaha County Jail. Calin's strange behavior continued in jail. The medical officer, a registered nurse, testi-

fied that Calin was exhibiting strange behavior shortly after being processed, including defecating and urinating improperly, painting the walls with his feces, and refusing to eat. He was placed in solitary confinement for his own safety. Calin's behavior continued and somewhat worsened. On January 10, he began hitting his head on the wall until it bled. At this point, the medical officer petitioned for an emergency medical hold and Calin was sent to the Human Services Center (HSC) for an involuntary five day civil commitment. The medical officer testified that he had not petitioned earlier because Calin had not been harming himself until January 10. On January 14, 2003, the Yankton County Board of Mental Illness committed Calin to HSC for an additional 90 days. At HSC, Dr. Ramesh B. Somepalli, the psychiatrist assigned to Calin's case, initially diagnosed Calin as having a psychotic disorder not otherwise specified and prescribed antipsychotic medication. The original antipsychotic medication was ineffective and eventually Calin was put on a high dose of an antipsychotic called Zydis. When Calin began refusing to take the medication, the doctors determined forced medication was needed. Calin began receiving forced medication on February 10, 2003. The medication gradually improved the symptoms of this illness until he was no longer exhibiting paranoia, inappropriate behavior or bizarre delusions. Calin was discharged and returned to the Minnehaha County Jail on February 25, 2003 in stable condition.

[¶ 4.] Calin's final discharge diagnosis was schizophreniform disorder and cannabis dependence. According to the discharge summary report, schizophreniform disorder is basically a schizophrenic illness in its beginning stages. The cannabis dependence diagnosis was the result of Calin's admission that he occasionally used marijuana. The report further stated that in the doctor's opinion, Calin was psychotic at the time of the alleged crime and did not know right from wrong. Calin was, however, found to be competent to stand trial. The improvement in Calin's condition was attributed to the effectiveness of his medications.

[¶ 5.] Calin waived his right to a jury trial and tried the matter to the court. After hearing all of the testimony and evidence, the trial court rejected Calin's insanity defense and found the defendant guilty but mentally ill. Calin was sentenced to two concurrent terms of ten years in the South Dakota State Penitentiary, with five years suspended on each. Calin appeals.

## ISSUE

Whether the trial court erred in finding the defendant guilty but mentally ill of all charges in light of the defendant's evidence in support of the affirmative defense of insanity.

## DECISION

[¶ 6.] Most of the facts of this case are not in dispute. At issue is whether the trial court's rejection of the insanity defense is supported by the evidence. Calin entered a plea of not guilty by reason of insanity. Under our statutory scheme, when a defendant enters this plea, he raises insanity as an affirmative defense. SDCL 23A–10–2, 22–5–10. The defendant has the burden of proving he was insane at the time he committed the crime by clear and convincing evidence. SDCL 22–5–10. This is not to say that the State is relieved of its burden of proving all the elements of the offense beyond a reasonable doubt. *See Leland v. Oregon,* 343 U.S. 790, 793–800, 72 S.Ct. 1002, 1005–08, 96 L.Ed. 1302,

1306–10 (1952). A court or jury can only consider the defense of insanity after finding that the State has proved all the elements of the offense, including mens rea; beyond a reasonable doubt. *Mullaney v. Wilbur*, 421 U.S. 684, 705, 95 S.Ct. 1881, 1893, 44 L.Ed.2d 508, 523 (1975) (Rehnquist, J., concurring). An insanity defense can only be successful if the defendant proves he did not know the wrongfulness of his action at the time he committed the crime. South Dakota defines insanity as follows:

"Insanity," the condition of a person temporarily or partially deprived of reason, upon proof that at the time of committing the act charged against him, he was incapable of knowing its wrongfulness, but not including an abnormality manifested only by repeated unlawful or antisocial behavior.

SDCL 22–1–2(20). Consequently, the trial court first had to determine that the State had met its burden of proving beyond a reasonable doubt all of the elements of the crime. Then, the court had to determine if Calin was incapable of knowing the wrongfulness of his acts at the time he committed the crimes. Additionally, upon a plea of not guilty by reason of insanity, the law allows a finder of fact to find a defendant guilty but mentally ill. The law provides:

If the defendant raises the defense of "not guilty and not guilty by reason of insanity," he may be found "guilty but mentally ill" if the trier of fact finds all of the following beyond a reasonable doubt:

(1) The defendant is guilty of an offense; and

(2) The defendant was mentally ill when he committed the offense.

SDCL 23A–26–14. Mental illness is defined at SDCL 22–1–2(24):

[A] substantial psychiatric disorder of thought, mood or behavior which affects a person at the time of the commission of the offense and which impairs a person's judgment, but not to the extent that he is incapable of knowing the wrongfulness of his act. Mental illness does not include abnormalities manifested only by repeated criminal or otherwise antisocial conduct[.]

We have previously explained the difference between criminal insanity and mental illness:

The distinction between sanity and mental illness rests upon a finding of knowledge or intent. "Insane people are legally incapable of committing crimes, but those people who are merely 'mentally ill' may be held criminally responsible."

*State v. Baker*, 440 N.W.2d 284, 288 (S.D. 1989) (citing *State v. Robinson*, 399 N.W.2d 324 (S.D.1987)).

▬▬ [¶ 7.] Here, the trial court found Calin guilty but mentally ill. We have previously said a "factfinder's decision on the issue of insanity will not be disturbed unless there is insufficient evidence to support it." *State v. Standing Soldier*, 299 N.W.2d 568, 573 (S.D.1980).[1] In reviewing sufficiency of the evidence, we determine, "whether or not there is evidence in the record which, if believed by [the trier of fact], is sufficient to sustain a finding of guilty [ but mentally ill] beyond a reasonable doubt." *Baker*, 440 N.W.2d at 287 (quoting *State v. Banks*, 387 N.W.2d 19, 27 (S.D.1986))(additional citations omitted). We accept the evidence, "and the most favorable inferences that can be fair-

---

1. *Standing Soldier* was decided prior to law changes requiring the defendant to prove by clear and convincing evidence the affirmative defense of insanity. The standard of review, however, is still appropriate.

ly drawn therefrom, which will support the verdict." *Id.; see also State v. Martin*, 2004 SD 82, ¶ 41, 683 N.W.2d 399, 412. In this case, the issue is whether there is sufficient evidence for the trial court to have found the defendant guilty but mentally ill or whether, as the defendant urges, the evidence supports by clear and convincing evidence a judgment of not guilty by reason of insanity.

[¶ 8.] In reviewing the sufficiency of the evidence, we look first at the trial court's written findings.[2] The trial court indicated he was not persuaded by clear and convincing evidence that Calin was legally insane at the time he committed the crime. The court, however, was convinced that Calin suffered from a significant mental illness, i.e. "Schizophreniform Disorder." The trial court, at the end of the trial, stated:

> The Court is making that finding that the defendant committed the offense, but the Court does find from the evidence produced that he does suffer significant mental illness that probably was compelling some of his actions and conduct.

The trial court made no mention on the record of the reasons it was rejecting the insanity defense. The court, however, in its written findings appears to have rejected the insanity defense because of specific concerns with Dr. Somepalli's opinion on that issue. The court accepted the doctor's opinion as to the mental illness diagnosis but rejected his opinion as to whether Calin knew the wrongfulness of his actions at the time he committed the crime. Our review must then focus on whether sufficient evidence exists to support the trial court's judgment.

[¶ 9.] Based on the record, this appears to be a close case. There was certainly sufficient evidence to support a finding of insanity had the court done so. This evidence included the defendant's bizarre behavior at the time of the crime and shortly before and after the crime, the defendant's behavior in jail, the defendant's condition upon commitment to HSC, the requirement of forced medications and the testimony of the psychiatrist that Calin did not know right from wrong at the time he committed the offense. Nevertheless, as we have previously stated: "[E]ven though the evidence may be supportive of the defense of insanity it is the province of the trier of fact, be it judge or jury, to determine whether the defendant was sane or insane at the time of the commission of the crime." *State v. Huber*, 356 N.W.2d 468, 475–76 (S.D.1984). The factfinder is the "exclusive judge of the credibility of the witnesses and the weight of the evidence in South Dakota. This includes the weight to be accorded an expert's testimony concerning the sanity of a defendant." *Id.* at 476 (internal citations omitted). The trial court had to judge the credibility of witnesses, including the expert. The court also had to weigh all of the evidence in order to reach his decision. As we have previously stated:

> In addition to the opinion evidence of experts and laymen, a defendant's mental condition may be proved by circumstantial evidence. The acts, conduct and declarations of the defendant, both prior and subsequent to the act charged, as well as at the time of its commission, are admissible to show his mental condition at the time of the act.

*State v. Kindvall*, 86 S.D. 91, 96, 191 N.W.2d 289, 292 (1971) (internal citations omitted).

---

2. Since this case was tried to the court and not to a jury, the court made detailed special findings. SDCL 23A–18–3. (Rule 23(c)).

[¶ 10.] Here, the court was not persuaded of the defendant's insanity. The evidence before the court consisted of the psychiatrist's opinion and the defendant's "acts, conduct and declarations . . . , both prior and subsequent to the act charged, as well as at the time of its commission[.]" *Id.* Some of defendant's actions could have been construed as knowledge on Calin's part, of the wrongfulness of his actions. For example, shortly after the crime the defendant admitted to the officer that he had been the one who entered the apartment. The defendant also told the officer details of the break-in, including that he had broken glass and strewn it around the apartment. The defendant had taken off his shoes and cleaned up the cut on his hand. He wanted to know if the officer believed in God and if the officer wanted to hear his confessions. Although his behavior around the time of the crime revealed serious mental illness, he appeared to have some touch with reality.

[¶ 11.] The court also perceived problems with Dr. Somepalli's testimony on the insanity issue. The trial court's findings listed three areas of the expert's testimony which raised credibility issues for the court. The court pointed to the doctor's failure to do a drug screen on Calin, the weakness of his explanation of Calin's delusions, and the doctor's lack of knowledge about the victims of the crime and how that may have affected the doctor's opinion. We also note that the doctor did not observe or speak with the defendant until approximately two weeks after the crime. During that time, the defendant was confined in the county jail. Medical staff in the jail reported that his behavior worsened "off and on" while in jail to the point of harming himself.

[¶ 12.] In weighing the evidence and determining the credibility of the witnesses, the court concluded it was not persuaded by clear and convincing evidence that the defendant was insane at the time of committing the offense. There is sufficient evidence in the record to sustain the court's finding of guilty but mentally ill.

[¶ 13.] We affirm.

[¶ 14.] GILBERTSON, Chief Justice, and ZINTER, Justice, concur.

[¶ 15.] SABERS and KONENKAMP, Justices, dissent.

SABERS, Justice (dissenting).

[¶ 16.] I would reverse because the trial court concluded that Calin failed to prove his affirmative defense of insanity by clear and convincing evidence under SDCL 22–5–10. This is plain error as the statute is unconstitutional. SDCL 23A–44–15 provides: "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of a court." *State v. Perovich*, 2001 SD 96, ¶ 34, 632 N.W.2d 12, 19.

[¶ 17.] The fatal constitutional defect of SDCL 22–5–10 is that it places upon the defendant "the burden of proving the defense of insanity by clear and convincing evidence." The State cannot constitutionally require a defendant to do more than raise a reasonable doubt as to his sanity, i.e., the defendant's burden of persuasion cannot exceed raising "a reasonable doubt." It is an unconstitutional invasion of the presumption of innocence to exceed this point. S.D. Const., art. VI § 2; *Robinson v. Solem*, 432 N.W.2d 246, 252 (S.D. 1988) (Sabers, J., concurring in result in part and dissenting in part).

[¶ 18.] The State must prove each and every element of the crime charged beyond a reasonable doubt. Most serious crimes contain an element which overlaps

sanity.[3] Therefore, if the defendant raises a reasonable doubt as to his sanity, it becomes constitutionally inconsistent and impossible for the State to prove the overlapping element of the crime *beyond* a reasonable doubt.

[¶ 19.] Therefore, the statute poses a very great danger for jury confusion and for conviction by less than beyond a reasonable doubt and is unconstitutional. S.D. Const., art. VI § 2; *State v. Rough Surface*, 440 N.W.2d 746, 760 (S.D.1989) (Sabers, J., dissenting); *State v. Baker*, 440 N.W.2d 284, 294 (S.D.1989) (Sabers, J., dissenting); *Robinson*, 432 N.W.2d at 252 (Sabers, J., concurring in result in part and dissenting in part).

[¶ 20.] Even if a majority of the members of this Court do not agree that SDCL 22-5-10 is unconstitutional, for all the reasons set forth in the majority opinion, I am satisfied that Calin proved by clear and convincing evidence that he was insane, that he did not know right from wrong.

[¶ 21.] In addition to the bizarre behavior set forth in paragraphs 2, 3 and 4 of the majority opinion, the only diagnosis in the settled record is that "Calin was psychotic at the time of the alleged crime and *did not* know right from wrong." (emphasis added). In the absence of countering information or opinions, this is more than sufficient to establish by clear and convincing evidence that he was not sane and did not know right from wrong at the time of the alleged crime.

KONENKAMP, Justice (dissenting).

[¶ 22.] The evidence in this case simply does not support a finding of guilt beyond a reasonable doubt. Although the trial judge deserves deference on his credibility findings, and granting the judge's skepticism on the psychiatric testimony, the record appears uncontradicted that the defendant was incapable of understanding the wrongfulness of the acts charged against him. He should have been found not guilty by reason of insanity.

---

3. I submit that the state may rest its case after it has made a *prima facie* showing of defendant's sanity, and that the burden then shifts to the defendant to go forward with evidence to challenge that showing, but in the final analysis, the burden of proof to prove every element of a charged crime (including the sanity of the defendant) beyond a reasonable doubt is upon the State. *Robinson*, 432 N.W.2d at 252 (Sabers, J., concurring in result in part and dissenting in part).